## Ex Parte Fay Ernest.

No. 20680.   Delivered December 20, 1939.
Rehearing Denied February 21, 1940.

The opinion states the case.

*Cantey, Hanger, McMahon, McKnight & Johnson, R. K. Hanger,* and *J. A. Gooch,* all of Fort Worth, for relator.

*Cole, Patterson & Cole,* of Houston, and *Terrell, Davis, Hall & Clemens,* of San Antonio, amicus curiae.

*Paul Petty,* of Ballinger, for respondent.

*L. L. Geren* and *L. W. Shepperd,* both of Groesbeck, for the City of Groesbeck.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

On August 9, 1939, relator Fay Ernest presented to this Court his original application for a writ of habeas corpus charging that he was illegally restrained of his liberty by the Marshall of the City of Winters, under and by virtue of a warrant issued out of the Corporation Court of said city by the Secretary thereof, based upon a complaint charging him with having unlawfully sold and delivered bread manufactured for human consumption which was prepared and baked in a bakery located in Fort Worth, Texas, the owner and operator of which had not obtained from the health officer of the City of Winters a permit or license to sell or deliver its bread within the limits of said city as provided by ordinance. The writ was granted by this Court, as prayed for, and the hearing set for October 4. The ordinance is attacked by the relator on many grounds, among them being that it is unconstitutional under the 14th amendment of the Federal Constitution and under Sections 3 and 19 of Art. 1 of our Texas Constitution. We do not deem it necessary to decide the case on Constitutional grounds, inasmuch as it is our opinion that the ordinance is invalid because the city had no power, under any legislative grant, to pass such an ordinance. In order to more clearly reflect the basis of our decision, we deem it proper to set out the pertinent sections of said ordinance. The caption thereof reads as follows: "An Ordinance regulating the manufacture, handling, storage, sale and distribution of bread and other bakery products intended for human consumption within the corporate limits of Winters, Texas, prescribing sanitary and health regulations for such products and the handling of same; prescribing license, permit and inspection fees for bakeries

within and without the city limits; providing that where part of the ordinance is held to be unconstitutional it shall not affect other parts; prescribing penalties for violations; and declaring an emergency."

Section 8 of said ordinance provides as follows: "For the purpose of carrying into effect the provisions of the ordinance, the City Health Officer of the City of Winters shall be charged with the responsibility for and authorized to carry out and enforce the provisions of this ordinance, and the City Health Officer, with the approval of the governing body, is hereby authorized to appoint an inspector to assist the Health Officer in the enforcement of this ordinance, acting under the supervision and direction of the City Health Officer. Any person, firm, or corporation or association who shall sell, offer for sale or deliver within the City limits of the City of Winters, any bread, pies or doughnuts intended for human consumption, prepared or manufactured by such person, firm, corporation, or association shall first make application on forms prescribed by the Health Officer of the City of Winters, for authority to engage in the business of selling, offering for sale and delivery of such products. Immediately upon the filing of such application with the Health Officer, the Health Officer, or inspector provided for in this ordinance shall inspect the plant or bakery wherein such products are prepared and manufactured for sale, and if said Health Officer, or inspector finds that said plant and bakery is equipped and operated in compliance with the requirements of this ordinance, he shall approve said application and grant a permit upon the payment of a permit, license and inspection fee of $12.50 for a bakery located within the corporate limits of the City of Winters and for a bakery outside said limits the fee shall be determined as follows: To the above mentioned fee of $12.50 for bakeries within the City limits, add $2.40 for each mile of distance such bakery is located from the City of Winters, the distance being measured along the most direct designated highway leading to such bakery. If said Health Officer or inspector shall find that said plant or bakery is not equipped or operated in compliance with the provisions of this ordinance he shall refuse to grant such permit until such plant and bakery is equipped and operated in accordance herein provided for; shall inspect all bakeries holding permits of the City of Winters, not less than once each month."

From the ordinance it appears that no matter how far outside the corporate limits of Winters the plant of the com-

pany desiring to sell bread within said city is located, the inspection by the Health Officer of the City of Winters is still authorized and demanded as a prerequisite to the sale of bread, etc., within its limits. In the case of bread baked in Fort Worth, located 175 miles from Winters, the fee or license amounts to $432.50. Sec. 9 of said ordinance makes it unlawful to sell any bread, pies or doughnuts in Winters unless the permit has been obtained in conformity with Section 8. Sec. 11 of said ordinance provides a penalty up to one hundred dollars for a violation of the same and declares that a violation constitutes a misdemeanor. The preceding sections of the ordinance contain practically the same provisions as Art. 719 P. C. and a reference to that article without setting it out at length is deemed sufficient.

The appellant was charged with having sold bread, delivered in the City of Winters and manufactured by Mrs. Baird's Bakery, Inc., located in Fort Worth. This plant seems to be an up to date one which meets all the requirements of Arts. 705 and 719 P. C. relating to health and sanitation measures. It is not charged in the complaint that relator sold or delivered any unwholesome or contaminated bread; hence the presumption obtains that the bread was suitable for human consumption. Nor is it charged that the bakery in Fort Worth was not operated in compliance with Arts. 705 and 719, P. C., supra. Consequently, in our opinion, the only question involved is whether the City of Winters, by ordinance, can require the bakeries located in the City of Fort Worth and elsewhere to pay to the authorities of Winters the sum of $2.40 per mile. The health officer of the City of Winters, or any other agency of said municipality, not having a legal right to inspect the bakeries located in Fort Worth would not legally be entitled to compensation for such services. To permit the health officer of the City of Winters to invade the City of Fort Worth and to inspect the bakeries located therein and require the bakeries to pay to the City Health Officer of Winters the sum of $2.40 per mile provided for in said ordinance as a prerequisite to the privilege of selling their products in said city, would be an assumption of authority and the exercise of extra-territorial powers not delegated to it by any Constitutional or Legislative grant. The power of municipalities is concisely stated in 28 Cyc., p. 266 as follows: "As a general rule a municipal corporation's powers cease at municipal boundaries and cannot, without plain manifestations of legislative intention, be exercised beyond its limits."

See also City of Arlington v. Lillard, 294 S. W., 829, in which the court uses the following language with respect to this matter: "The jurisdiction or power exercised by a municipal corporation is and must be confined to the territory of its situs (except where authorized for purely local purposes), to its inhabitants, and to its corporate entity, and cannot be divorced therefrom either in fact, thought, or law."

Municipal ordinances are, therefore, necessarily local in their application, operating usually only in the territory of the municipality in which they are enacted and without force beyond it. Each incorporated city is a political subdivision of the State, and operates under and by virtue of authority conferred upon it by the Constitution and the Legislature. The City of Winters is incorporated under the general laws of the State of Texas and has no special charter. Each such city has only such powers as are expressly given it, and those which may be necessarily implied therefrom. Its jurisdiction is ordinarily limited to its boundaries unless the Legislature expressly grants it extra-territorial powers. Each municipality such as the City of Winters stands upon the same footing and has the same legal authority and all have the same legal right to make necessary rules and regulations relative to health, sanitary conditions, etc. This being true, we do not think one municipality may invade the province of another and require its citizens to permit an invasion of their factories by a health officer of another city, and to require the bakery to pay an inspection fee to such health officer as a prerequisite to its right to dispose of its products in said city, a failure on the part of the bakery to comply with such ordinance subjecting the operator of the bakery or one acting for it subject to criminal prosecution and a fine. Should this be approved as within its charter powers, the result would be that bakeries located in one city, although complying strictly with the sanitary laws provided by the State and its own municipality, would be confined in the disposition of their products to their territorial limits unless they complied with the regulations aforesaid of any other city in which they desired to do business. In addition they would be required to pay a fee prescribed by the other city, the amount thereof depending upon the distance of said city from their plant. Under what authority the City of Winters may legally extract from the bakeries located outside of its city the fee prescribed in the ordinance is, we must confess, unknown to us, nor are we cited to any. The effect of such a provision is nothing more nor less than to establish a tariff wall by confining bakeries,

in their commercial activity to the limits of their own municipality which appears to us to be in restraint of trade. See Kosciusko v. Slomberg, 12 L. R. A. (1891), 528. To establish and approve such doctrines would give to the bakeries of the City of Winters the exclusive right and privilege to supply the needs of its inhabitants with bread. If this doctrine can be sustained with reference to bread then it would seem that it can be sustained as to all food, including fruit and groceries. It might be that many dealers at wholesale located in the larger cities would welcome such holding by the courts, as it would give them the exclusive right to do business within the confines of their respective cities. It is obvious that the City of Winters by the ordinance in question, is attempting to exercise extra-territorial jurisdiction over bakeries located outside of its territory when the Legislature has neither expressly nor impliedly granted any such power or authority. However we do not wish to be understood as holding that the manufacturer of bread could not be punished under an ordinance of the City of Winters for selling unwholesome bakery products within said city. It is true that under subsection 19 of Art. 1175 R. C. S., the Legislature saw fit to grant extra-territorial powers to municipalities with respect to health, etc. Yet it limited such extra-territorial powers to dairies and slaughterhouses— making no mention of bakeries. Consequently the Legislature confined and limited the grant of such authority and the courts would not be authorized by judicial construction to extend it to include bakeries. Moreover, we do not think that the Legislature intended for this section to authorize one city to extend its functions and authority into another city. At any rate, these sections appear to relate only to Home Rule Cities. Art. 1015 R. C. S., relating to cities such as Winters, nowhere grants the cities power to exercise extra-territorial powers with reference to bread or any other commodity which extend into the confines of another city.

Art. 4414a R. C. S. provides for the State board of health; Art. 4418a prescribes the duties of this board; Art. 4423 provides for the appointment of a county health officer, and Art. 4425 provides for the appointment of a city health officer. Art. 4430 prescribes the duties of a city health officer, and Art. 4427 provides the duties of a county health officer. We cannot believe that the Legislature, in enacting these provisions and providing for these officers, intended that their duties should overlap. That the legal authority of one county health officer or one city health officer should be so construed as to allow him jurisdiction over another county or city. Such seems

manifest from the wording of the statutes and any other interpretation would tend to create confusion and lead to friction. To authorize or permit the City of Winters to extend its authority of inspection to within the limits of the City of Fort Worth would be an encroachment by the City of Winters upon like powers of the City of Fort Worth and make its powers subordinate and subservient to the powers of the City of Fort Worth. We are cited by the City of Winters to the decision by the Court of Civil Appeals for the Tenth Supreme Judicial District of Texas in the case of the Jones Fine Bread Company, et al v. City of Groesbeck, et al, in support of the contention that in such case a similar ordinance as the one here in question was construed and unpheld. We are informed that upon motion for rehearing the Court of Civil Appeals certified the question to the Supreme Court of Texas, where it is still pending.

We note, however, that the Court of Civil Appeals held that the city had the legal authority, under Art. 1015 R. C. S. to regulate the inspection of beef, pork, flour, meal, salt and other provisions * * * to regulate the weight and quality of bread to be sold or used within the city * * * to authorize the proper officers of the city to grant and issue licenses, etc. It appears that the decision in that case is based upon the general powers of regulation in the confines of its territorial limits without giving consideration to the principle that the power and authority of one city ends where the other begins. There is no question in our minds as to the authority of the city to pass such an ordinance and enforce it as it applies to that particular city, but we do not think that it can be seriously contended that one city can legally authorize its city health officer to invade the province of a sister city, make inspection of its bakeries, dairies, etc., and require the bakeries to pay the city health officer the inspection fee specified in the present ordinance. It seems to us that such procedure is contrary to the spirit and object of our form of government and the statutes above referred to. There is no doubt of the legal authority of the City of Winters to inspect food products when they enter its borders and punish those for bringing contaminated bread into the city. However, the powers of city health officers and their qualifications are assumed to be equal. Their integrity in the absence of any showing to the contrary must be assumed to be above reproach. Consequently when the bakeries of the City of Fort Worth are inspected by the city health officer thereof and have issued to them a clear bill of health,

what useful purpose could be served by an inspection of their bakery by the health officer of the City of Winters?

In the case of the City of Rockford v. Hey, 9 N. E. (2d), 317, it appears that the City of Rockford enacted an ordinance prohibiting the sale of ice cream for human consumption within said city which was made or manufactured by anyone in another city without first having its factory inspected by the health officer of the City of Rockford and a permit or license obtained from him. The ordinance in question here is very similar to the one in question in that case. The Court, among other things, held that the City of Rockford had no such extraterritorial powers as would permit its officers to invade the territorial dominion of other municipal corporations. See also Root v. Mizell, 95 Fla., 979, 117 Southern Reps., 380—in which the Supreme Court of Florida also held that a municipal corporation could not inspect dairies beyond the corporate limits of the city without legislative authority, and require non-resident dairymen to pay an inspection fee of $25 per month or $300 per annum. We do not deem it necessary to cite any other authorities in support of the opinion herein expressed because viewing it as an elementary legal proposition, it appears to us to be predicated upon a firm foundation.

Having reached the conclusion that the ordinance in question, insofar as it authorized the city health officer of Winters to enter the domain of another city to inspect bakeries therein located and require the operator thereof to pay an inspection fee of $2.40 per mile as a prerequisite to sell its bread in said city, is void, it is therefore ordered that the relator be, and he is, discharged.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON RESPONDENT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

After carefully considering respondent's motion for rehearing, we are constrained to adhere to the conclusion expressed in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.