The CITY OF WEST LAKE HILLS,
Texas, Appellant,

v.

WESTWOOD LEGAL DEFENSE
FUND, Appellee.

No. 6157.

Court of Civil Appeals of Texas,
Waco.

April 17, 1980.

John McAllen Scanlan, Scanlan & Buckle, Austin, for appellant.

David H. Walter, Bender, Walter & Wahlberg, Austin, for appellee.

## OPINION

JAMES, Justice.

This is an appeal from a judgment permanently enjoining the Appellant, City of West Lake Hills, from enforcing by criminal action an ordinance which requires the licensing of private sewage facilities located within the city's extraterritorial jurisdiction. We affirm the judgment.

The Appellant, City of West Lake Hills, is a general law city having a population of less than 5000 people. On or about October 12, 1977, the City Council passed an ordinance, 108–B, attempting to control pollution flowing from private sewage facilities. Ordinance 108–B, among other things, sets forth standards for the operation and construction of private sewage facilities[1] and required inspection and licensing of all such facilities existing within the city's limits or within the city's extraterritorial jurisdiction. Inspections were to be made by the city for a fee of $25 unless an owner hired his own engineer or registered sanitarian to inspect the facility, in which case a fee of $15 would be levied to cover the cost of processing reports required to be submitted by a private inspector. If the facility met the express standards of the ordinance, a license immediately issued; if not, the city was required to specify the reasons for rejecting the application for license and the city was authorized to issue interim licenses while the facility was modified to comply with the standards. Most licenses were to be issued for a 5-year period, but a license could be revoked at any time for non-compliance. Enforcement of the ordinance was by criminal action brought in the city's municipal court. Offenses proscribed by the ordinance included, inter alia: 1) using or permitting the use of an unlicensed private sewage facility on property owned or possessed by the offender; and 2) failure of an owner to make application for a license for an existing private sewage facility on property within 90 days after notice by the city. Convictions were punishable by a fine of not more than $200 for each separate offense.

The evidence establishes that the ordinance in question was passed solely upon

1. "Private sewage facility" was defined as "any septic system, or other facility, system, or method for the storage, treatment, or disposal of sewage other than an organized disposal system." (An "organized disposal system" being "any public or private system for the collection, treatment, and disposal of sewage operated in accordance with the terms and conditions of a permit from the Water Quality Board.")

the city's initiative and not as a joint effort between the city and any state or county authority.

The Appellee, Westwood Legal Defense Fund, is a coalition of homeowners, all of which reside in a subdivision known as Westwood, which is located entirely outside the corporate limits but within the extra-territorial jurisdiction of the City of West Lake Hills. The Appellee filed this suit to enjoin West Lake Hills from enforcing its Ordinance 108–B insofar as it applied to facilities located outside the city's corporate limits, pleading that the city lacks express or implied legislative authority to regulate by licensing any private sewage facilities located outside the city's corporate limits; that the ordinance is hopelessly in conflict with state law since the Legislature has granted exclusive authority for the regulation of private sewage facilities to the Texas Water Commission and the commissioners court of any county, citing Secs. 26.031 and 26.032 of the Texas Water Code; that the ordinance imposes a fine not to exceed $200 for any violation thereof, that such a fine is penal in nature and is prohibited by state law, citing Art. 970a, Sec. 4; that the penalty further conflicts with state law since Sec. 26.214 of the Texas Water Code provides the exclusive remedy as well as proper venue for violations of private sewage facility orders; that the scheme of the ordinance is arbitrary, capricious and unreasonable; that the ordinance represents a violation of the constitutional prohibition against the enactment of retroactive or ex post facto laws; and that the ordinance constitutes an unconstitutional taking of property without due process.

The case was submitted to the trial court on stipulated facts and written briefs and the court rendered judgment granting a permanent injunction prohibiting the City of West Lake Hills from enforcing by criminal action that provision of Ordinance 108–B which requires the licensing of private sewage facilities located within the city's extraterritorial jurisdiction. The trial court's judgment recited that "the CITY OF WEST LAKE HILLS, TEXAS, Ordi-

nance 108–B is a valid exercise of legislatively granted powers to the CITY OF WEST LAKE HILLS, TEXAS, and that such Ordinance is in all respects valid and enforceable except as hereinafter set out:

"a. That DEFENDANT CITY OF WEST LAKE HILLS, TEXAS, Ordinance 108–B exceeds the authority granted to the DEFENDANT CITY OF WEST LAKE HILLS by the State of Texas only in its attempt to require the licensing of private sewage facilities in the DEFENDANT'S extraterritorial jurisdiction.

"b. That the Municipal Court of the CITY OF WEST LAKE HILLS, TEXAS, has no jurisdiction to try violations of Ordinance 108–B alleged to have occurred in the DEFENDANT CITY'S extraterritorial jurisdiction."

Further the judgment expressly recited that "Nothing contained herein should be interpreted as expressing any opinion over any of the provisions of Ordinance 108–B as they apply within the city limits of the CITY OF WEST LAKE HILLS, TEXAS."

The City appeals claiming simply that the court erred in finding its Ordinance 108–B invalid in the two respects set forth above. We overrule the City's contentions.

■ A city can exercise only those powers that are expressly or impliedly conferred by law, and a power will be implied only when such power is reasonably incident to those expressly granted or is essential to the object and purposes of the corporation. *Davis v. City of Taylor*, 67 S.W.2d 1033, 123 Tex. 39 (1934); *Anderson v. City of San Antonio*, 67 S.W.2d 1036, 123 Tex. 163 (1934); *Foster v. City of Waco*, 255 S.W. 1104, 113 Tex. 352 (1923). Furthermore, any fair, reasonable, or substantial doubt as to the existence of a power will be resolved against the municipality. *Foster v. City of Waco*, cited supra. The City argues that the power exercised in Ordinance 108–B is in fact expressly or at least impliedly conferred by Sec. 26.177 of the Texas Water Code, which in its pertinent parts provides:

"(a) Every city in this state having a population of 5,000 or more inhabitants shall, and any city of this state may, establish a water pollution control and abatement program for the city.

 *      *      *      *      *      *

"(b) The water pollution control and abatement program of a city shall encompass the entire city and may include areas within its extraterritorial jurisdiction which in the judgment of the city should be included to enable the city to achieve the objectives of the city for the area within its territorial jurisdiction. The city shall include in the program the services and functions which, in the judgment of the city or as may be reasonably required by the commission, will provide effective water pollution control and abatement for the city, including the following services and functions:

"(1) the development and maintenance of an inventory of all significant waste discharges into or adjacent to the water within the city and, where the city so elects, within the extraterritorial jurisdiction of the city, without regard to whether or not the discharges are authorized by the department;

"(2) the regular monitoring of all significant waste discharges included in the inventory prepared pursuant to Subdivision (1) of this subsection;

"(3) the collecting of samples and the conducting of periodic inspections and tests of the waste discharges being monitored to determine whether the discharges are being conducted in compliance with this chapter and any applicable permits, orders or rules of the department, and whether they should be covered by a permit from the commission;

"(4) in cooperation with the department, a procedure for obtaining compliance by the waste discharges being monitored, including where necessary the use of legal enforcement proceedings; and

"(5) the development and execution of reasonable and realistic plans for controlling and abating pollution or potential pollution resulting from generalized discharges of waste which are not traceable to a specific source, such as storm sewer discharges and urban runoff from rainwater."

The city contends that this statute constitutes a broad, general grant of power to cities to formulate plans for the control of pollution and that such plans can reasonably include licensing of private sewage facilities and enforcement by criminal action. The city supports its argument by citing Attorney General's Opinion No. H–304 (1974), wherein the Attorney General concludes that:

"A city has broad powers to establish water pollution control programs under (Sec. 26.177), Texas Water Code. These powers can include regulation of private sewage facilities in the city and in its extraterritorial jurisdiction."

In construing a statute, it is our duty to examine the entire act and construe it as a whole. One provision of a statute will not be given a meaning out of harmony or inconsistent with other provisions, even though it might be susceptible to such construction if standing alone. *Merchants Fast Motor Lines, Inc. v. Railroad Commission of Texas*, 573 S.W.2d 502 (Tex.1978); *Barr v. Bernhard*, 562 S.W.2d 844 (Tex. 1978); *Gerst v. Oak Cliff Savings & Loan Assn.*, 432 S.W.2d 702 (Tex.1968). For this reason we cannot accept the City's argument, nor can we agree with the Attorney General's Opinion to the extent that it may support the City's position in this case. If Sec. 26.177 of the Texas Water Code were the only statutory provision relating to the control and abatement of pollution, there might be some merit to the argument. However, Sec. 26.177 is only one provision in a much more complex and comprehensive legislative scheme. When Chapter 26 is viewed in its entirety, regardless of the broad, general language of Sec. 26.177, it is clear that the section was not intended to authorize cities on their own initiative to regulate private sewage facilities by licensing such facilities. For example, Sec. 26.-031 of the Texas Water Code, relating to "private sewage facilities," provides that:

 *      *      *      *      *      *

"(b) Whenever it appears that the use of private sewage facilities in an area is causing or may cause pollution or is injuring or may injure the public health, the *commission* may hold a public hearing in or near the area to determine whether an order should be entered controlling or prohibiting the installation or use of private sewage facilities in the area.

\* \* \* \* \* \*

"(d) If the commission finds after the hearing that the use of private sewage facilities in an area is causing or may cause pollution or is injuring or may injure the public health, the *commission* may enter an order as it may consider appropriate to abate or prevent pollution or injury to public health.

\* \* \* \* \* \*

"(f) The *commission* may provide in the order for a system of licensing of private sewage facilities in the area, including procedures for cancellation of a license for violation of this section, the license, or the orders or rules of the department. The commission may also provide in the system of licensing for periodic renewal of the licenses, but this may not be required more frequently than once a year.

"(g) *The commission may delegate the licensing function and the administration of the licensing system* to the executive director or *to any local government whose boundaries include the area* or which has been designated by the commission under Sections 26.081 through 26.086 of this code as the agency to develop a regional waste disposal system . . .

"(h) The board also may prescribe and require the payment of reasonable license fees. . . .

"(i) If the commission or the executive director has the responsibility for performing the licensing function, the license fees shall be paid to the department. . . .

"(j) If a local government has the responsibility for performing the licensing function, the fees shall be paid to the local government." (emphasis ours)

Sec. 26.032 of the Texas Water Code further provides that:

"(a) Whenever it appears to the commissioners court of any county that the use of private sewage facilities in an area within the county is causing or may cause pollution or is injuring or may injure the public health, the county may proceed in the same manner and in accordance with the same procedures as the commission to hold a public hearing and enter an order, resolution, or other rule as it may consider appropriate to abate or prevent pollution or injury to public health.

"(b) The order, resolution, or other rule may provide the same restrictions and requirements as are authorized for an order of the commission entered under this section.

"(c) Before the order, resolution, or other rule becomes effective, the county shall submit it to the commission and obtain the commission's written approval.

\* \* \* \* \* \*

"(e) Where a system of licensing has been ordered by the commission or the commissioners court of a county, no person may install or use private sewage facilities required to be licensed without obtaining a license."

These two sections of the Water Code (Secs. 26.031 and 26.032) specifically grant the power to license private sewage facilities to the Texas Water Commission and to the Commissioners Courts of Texas counties. On the other hand, Sec. 26.177, granting the power to "control and abate water pollution," does not specifically grant the power to license such facilities nor does the language of Sec. 26.177 in any way track or resemble the language of Secs. 26.031 or 26.032. Furthermore, Sec. 26.031 expressly states that the power to license may be delegated to a city by the commission. In order to give any effect to this specific provision, we would have to conclude that the power granted to the cities by Sec. 26.177 does not include the power that can be delegated by the Water Commission under Sec. 26.031.

The city contends that Secs. 26.031 and 26.032 cannot be construed to limit the powers granted under Sec. 26.177 since neither 26.031 nor 26.032 expressly prohibits regulation of private sewage facilities by cities. As a general rule, however, in the construction of statutes a general clause is limited or controlled by a special provision. It is said that this rule is based upon the principle that a specific clause or statute more clearly evidences the intention of the Legislature. *City of Baytown v. Angel* (Houston—14th CA 1971) 469 S.W.2d 923, NRE.

In the instant case the specific assignment of the power to license private sewage facilities (Secs. 26.031 and 26.032) limits the more general grant of power to the cities. In our opinion it is clear that the Legislature intended to reserve to the State the ultimate power to regulate in the area of pollution control. Even though the counties have express authority to develop licensing requirements, such requirements must be approved by the state. Sec. 26.032(c). Even though the cities may assist in obtaining compliance with pollution standards, these efforts must be in cooperation with the Texas Department of Water Resources. Sec. 26.177(b)(4). Although the Legislature recognized the importance of cooperative efforts between state and local governmental bodies, the state is assigned responsibility for promulgating rules and regulations to control pollution problems. Sec. 26.177 lists five specific functions and services that are or may be assigned to the cities. None of these functions and services specifically requires passage of rules and regulations for controlling pollution. Instead, the functions and services listed in Sec. 26.177 are in the nature of "information gathering" functions which would ultimately be very valuable to assist the state in designing and in enforcing its rules and regulations. Sec. 26.177(b)(3), for example, expressly states that the city's inspection and collection services are designed to determine whether the discharges are meeting applicable permits, rules, or orders of the state department and whether they should be covered by a permit from the state commission. In our opinion, Sec. 26.177 requires (in the case of cities over 5000) or allows (in the case of cities less than 5000) cities to monitor pollution levels both in their corporate limits and in their extraterritorial jurisdictions. The information gathered in this monitoring could (or should) be used by cities in developing plans for growth and expansion, which may of course include consideration of problems in the extraterritorial jurisdiction. The information would further be vital to the initiation of action by the state under Sec. 26.031(b), or by the county under Sec. 26.032(a), if pollution problems were detected by the city in regard to private or public sewage facilities within or surrounding the city. However, the legislative scheme simply does not contemplate independent regulatory action by a city.

The city argues alternatively that Ordinance 108–B is a valid exercise of powers granted to it under Art. 1076 and Art. 1015(39), R.C.S. Art. 1076 directs that "Every city in this State, however organized, having underground sewers or cesspools, shall pass ordinances regulating the tapping of said sewers and cesspools, regulating house draining and plumbing"; and Art. 1015(39) is a general grant of the power to license. All powers granted to a city can only be exercised within the corporate limits of a city unless the power is *expressly* extended to apply to areas outside these limits. *City of Sweetwater v. Hamner* (Ft. Worth CA 1924) 259 S.W. 191, writ dismissed; *Ex parte Ernest*, 138 Tex.Cr.R. 441, 136 S.W.2d 595 (1940). The Appellees in this case only challenge the power of the city to regulate private sewage facilities located wholly within the city's extraterritorial jurisdiction rather than within the city's corporate limits. Neither Art. 1076 nor Art. 1015(39) expressly authorizes regulations applying outside the corporate limits and cannot therefore be relied on in this case. The question of the validity of Ordinance 108–B as it applies to facilities located within the city limits of City of West Lake Hills is not raised by this case and we do not decide that issue.

The Appellant City assigns as a separate point of error the conclusion of the trial court that the municipal court has no jurisdiction to try violations of Ordinance 108–B alleged to have occurred in the extraterritorial jurisdiction of the city. As a general rule, a municipal court only has jurisdiction to enforce violations occurring within the corporate limits of the city. Art. 1195, R.C.S. A municipal court may, however, have jurisdiction to try offenses occurring outside the corporate limits if the offenses constitute violations of city ordinances which validly apply to the area in which the offense occurred. *Treadgill v. State*, 160 Tex.Cr.R. 658, 275 S.W.2d 658 (1955); *Parker v. City of Ft. Worth* (Ft. Worth CA 1955) 281 S.W.2d 721, no writ. Having found that the city had no authority to apply its licensing regulations in the extraterritorial jurisdiction, we must also hold that the municipal court has no jurisdiction to try violations of the ordinance which may occur in the extraterritorial jurisdiction.

Judgment of the trial court is affirmed.

AFFIRMED.