March 15, 2010

The Honorable Patrick M. Rose
Chair, Committee on Human Services
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0762

Re: Whether a Type A general-law municipality may impose and enforce a nonpoint source pollution ordinance in its extraterritorial jurisdiction pursuant to section 26.177 of the Water Code (RQ-0822-GA)

Dear Representative Rose:

On behalf of the City of Wimberley, you ask whether "a Type A General-Law city has the authority to impose and enforce a nonpoint source pollution ordinance" in its extraterritorial jurisdiction under section 26.177 of the Water Code.[1] Subsection 26.177(a) of the Water Code states, "[a] city may establish a water pollution control and abatement program for the city." TEX. WATER CODE ANN. § 26.177(a) (Vernon 2008). Subsection 26.177(b) further explains that

> [t]he water pollution control and abatement program of a city shall encompass the entire city and, subject to Section 26.179 of this code,[2] *may include areas within its extraterritorial jurisdiction* which in the judgment of the city should be included to enable the city to achieve the objectives of the city for the area within its territorial jurisdiction. The city shall include in the program . . . the following services and functions:
>
> . . . .

---

[1]Request Letter (*available at* http://www.texasattorneygeneral.gov).

[2]Section 26.179 of the Water Code permits the owner or owners of land in the extraterritorial jurisdiction of some municipalities to designate a tract as a water quality protection zone. TEX. WATER CODE ANN. § 26.179(c)–(d) (Vernon 2008). Once the Texas Commission on Environmental Quality approves the designation, municipalities are prohibited from enforcing their pollution control and abatement programs within such zones. *Id.* § 26.179(j). However, the Texas Supreme Court held that section 26.179 of the Texas Water Code, as it was enacted in 1995, was unconstitutional as an impermissible delegation of authority to private landowners. *FM Prop. Operating Co. v. City of Austin*, 22 S.W.3d 868, 888 (Tex. 2000). Although the Legislature amended the statute in 1999, a prior attorney general opinion concluded that "the Texas Supreme Court's analysis of section 26.179 in *FM Properties* would not change in light of the 1999 amendments." Tex. Att'y Gen. Op. No. JC-0402 (2001) at 6.

> (5)  the development and execution of reasonable and realistic plans for controlling and abating pollution or potential pollution resulting from generalized discharges of waste which are not traceable to a specific source, such as storm sewer discharges and urban runoff from rainwater . . . .

*Id.* § 26.177(b) (emphasis added) (footnote added).

At the outset, we note that section 26.177 does not use the phrase "nonpoint source pollution" as you do in your request, nor is that phrase defined in the Water Code, although it is used in several other provisions.[3] *See* Request Letter; TEX. WATER CODE ANN. § 26.177 (Vernon 2008); *see also* TEX. WATER CODE ANN. §§ 26.0135 (Vernon Supp. 2009) (requiring State Soil and Water Conservation Board to coordinate certain "nonpoint source pollution" programs), 26.023 (Vernon 2008) (requiring consideration of effects of "nonpoint source pollution" in developing water quality standards). Instead, subsection 26.177(b)(5) addresses "generalized discharges of waste which are not traceable to a specific source, such as storm sewer discharges and urban runoff from rainwater." TEX. WATER CODE ANN. § 26.177(b)(5) (Vernon 2008). While the two phrases are conceptually similar, in considering your question, we confine our analysis to the exact language of the statute and address a Type A general-law municipality's authority in its extraterritorial jurisdiction to control and abate water "pollution resulting from generalized discharges of waste which are not traceable to a specific source." *Id.*

In answering your request, we first address whether section 26.177 applies to Type A general-law cities. Municipalities in Texas may be divided into three broad categories: general-law, special-law, and home-rule. *Laidlaw Waste Sys. v. City of Wilmer*, 904 S.W.2d 656, 658 (Tex. 1995). The Local Government Code further subdivides general-law municipalities into three types: A, B, and C. TEX. LOC. GOV'T CODE ANN. §§ 5.001–.003 (Vernon 2008). Section 26.177 of the Water Code applies to "a city" or "a municipality" without further distinction, and you therefore ask whether that section applies to any city, regardless of its size or whether the city is organized as a general-law or home-rule municipality. Request Letter.

The Legislature has charged the Texas Commission on Environmental Quality (the "Commission") with implementing the provisions of chapter 26 of the Water Code. TEX. WATER CODE ANN. § 26.011 (Vernon 2008). For purposes of section 26.177, the Commission has defined the term "city" as "a municipality or city existing, created or organized under the general, home rule, or special laws of this state." 30 TEX. ADMIN. CODE § 216.23 (2009) (Tex. Comm'n on

---

[3]"Point source" is defined in the Water Code as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, . . . or vessel or other floating craft, from which pollutants or wastes are or may be discharged into or adjacent to any water in the state." TEX. WATER CODE ANN. § 26.001(21) (Vernon 2008). The Texas Commission on Environmental Quality has defined "nonpoint source" as "[a]ny origin from which pollutants emanante in an unconfined and unchanneled manner, including, but not limited to, surface runoff and leachate seeps." 30 TEX. ADMIN. CODE § 330.3(92) (2009) (Tex. Comm'n on Environmental Quality, Municipal Solid Waste, Definitions).

Environmental Quality, Municipal Water Pollution Control and Abatement, Definitions). Thus, under the Commission's definition, the term city in section 26.177 would include Type A general-law cities. As the agency charged with administering the provisions of chapter 26 of the Water Code, the Commission's rules interpreting those provisions are entitled to deference, provided the agency's interpretation is reasonable and does not contradict the plain language of the statute. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006); *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993). We therefore analyze the Commission's construction of the term city in light of this standard.

In construing statutes, the primary objective is to ascertain and give effect to the Legislature's intent. *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006). Unambiguous statutory language is interpreted according to its common meaning unless such interpretation would lead to absurd results. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005); *Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex. 2009). The commonly-understood definition of the term city is "an incorporated municipality." AMERICAN HERITAGE DICTIONARY 276 (2d ed. 1982); *see also* THE NEW OXFORD AMERICAN DICTIONARY 312 (2001) (defining city as "an incorporated municipal center"). For purposes of the Local Government Code, when the Legislature simply uses the word municipality without further specification, it means "a general-law municipality, home-rule municipality, or special-law municipality." TEX. LOC. GOV'T CODE ANN. § 1.005(3) (Vernon 2008). Thus, the Commission's definition of the term city appears to be consistent with both the plain meaning and the Legislature's intent.

Furthermore, an examination of the Texas statutes as a whole reveals that the Legislature frequently enacts laws specific to one type of municipality. *See, e.g., id.* §§ 141.006 (applying to Type A general-law municipalities), 23.024 (applying to Type B general-law municipalities), 26.047 (applying to home-rule municipalities); TEX. WATER CODE ANN. §§ 26.0271 (Vernon Supp. 2009) (applicable to some home-rule municipalities only), 26.180 (Vernon 2008) (applicable to some type B or C general-law municipalities only). However, the plain language of section 26.177 of the Water Code does not distinguish between types of municipalities. When the Legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded. *Laidlaw*, 904 S.W.2d at 659. Had the Legislature wanted to limit the application of section 26.177 to specific types of cities, it knew how to do so. We conclude that the Commission's construction of the term city is neither unreasonable or contrary to the plain language of the statute and agree that section 26.177 applies to Type A general-law municipalities.

We next address whether section 26.177 authorizes a city to "voluntarily implement and enforce a water pollution and abatement program in its "extraterritorial jurisdiction." Request Letter. Under the plain language of section 26.177(b), the Legislature has authorized a city to establish a program to control and abate water pollution resulting from generalized discharges of waste not traceable to a specific source. TEX. WATER CODE ANN. § 26.177(b)(5) (Vernon 2008). Furthermore, this program may extend to the city's extraterritorial jurisdiction so long as "in the judgment of the city" doing so "enable[s] the city to achieve the objectives of the city for the area within its territorial jurisdiction." *Id.* § 26.177(b).

Consistent with the plain language, Texas courts have recognized a city's authority under section 26.177(b) "to enact ordinances, applicable . . . within its extraterritorial jurisdiction designed to control and abate actual or potential water pollution resulting from generalized discharges of waste not traceable to [a] specific source." *Lucas v. N. Tex. Mun. Water Dist.*, 724 S.W.2d 811, 817 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (holding that cities may not regulate sewer treatment plants, which are point sources, in their extraterritorial jurisdiction). In *City of Austin v. Jamail*, the Austin court of appeals specifically addressed a city's authority to enforce a nonpoint source pollution control ordinance in its extraterritorial jurisdiction. 662 S.W.2d 779, 780 (Tex. App.—Austin 1983, writ dism'd). Upholding the ordinance, the court concluded that subsection 26.177(b)(5) expressly provided the city with authority to execute its ordinance in its extraterritorial jurisdiction. *Id.* at 782–83.[4] Prior opinions of this office likewise recognize a city's authority under section 26.177 to enforce water pollution control and abatement programs within its extraterritorial jurisdiction. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0402 (2001) at 2–3, JM-226 (1984) at 7–8. Thus, the Legislature has granted express authority to a Type A general-law municipality to regulate, in its extraterritorial jurisdiction, pollution resulting from generalized discharges of waste which are not traceable to a specific source if the municipality first determines that implementing a water pollution control program in its extraterritorial jurisdiction is necessary to achieve pollution control objectives in its territorial jurisdiction.[5]

---

[4]Dicta in *City of West Lake Hills v. Westwood Legal Defense Fund* suggested that section 26.177 "does not contemplate independent regulatory action by a city." 598 S.W.2d 681, 686 (Tex. Civ. App.—Waco 1980, no writ). That opinion addressed the authority of cities to regulate private sewage facilities (point sources) in the cities' extraterritorial jurisdiction, and it is therefore distinguishable from the nonpoint source pollution asked about in the request at issue. *Id.* at 682; *see also Jamail*, 662 S.W.2d at 781 ("[T]his language [in *City of West Lake Hills*] is quite clearly dictum to the extent that it purports to define the scope of city authority under subection five . . . .").

[5]A brief submitted by the Texas Association of Builders suggests that the Texas Local Government Code limits the regulations that a city may include in a water pollution control and abatement program applicable to its extraterritorial jurisdiction. *See* Brief from Ned Muñoz, Director of Regulatory Affairs, Texas Association of Builders, to Honorable Greg Abbott, Attorney General of Texas, at 4 (Oct. 23, 2009) (on file with the Opinion Committee). However, you ask only about the general authority granted pursuant to section 26.177 of the Water Code, and our opinions are limited to the specific questions asked by an authorized requestor. Tex. Att'y Gen. Op. No. GA-0283 (2004) at 9 n.2. Therefore, we express no opinion on the validity of any specific controls that may be included within a city's pollution control and abatement program.

## S U M M A R Y

Pursuant to Water Code subsection 26.177(b)(5), if a Type A general-law municipality determines that implementing a water pollution control program in its extraterritorial jurisdiction is necessary to achieve pollution control objectives in its territorial jurisdiction, the Legislature has authorized the municipality to regulate, in its extraterritorial jurisdiction, pollution resulting from generalized discharges of waste which are not traceable to a specific source.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee