PPC ENTERPRISES, INC., Johnnie Pate, Johnny Johnson, Michael Zellner, Thomas Rice, Nicholas Martins, Sue Smith, and Dan Baldwin, Plaintiffs,

v.

TEXAS CITY, TEXAS and League City, Texas, Defendants.

No. Civ.A. G–99–368.

United States District Court, S.D. Texas, Galveston Division.

Dec. 1, 1999.

Lauren Margaret Serper, Attorney at Law, Houston, TX, for PPC Enterprises, Incorporated, Johnnie Rate, Johnny Johnson, Michael Zellner, Thomas Rice, Nicholas Martins, Sue Smith, Dan Baldwin, plaintiffs.

John Edward Eckel, Mills Shirley et al., Galveston, TX, Carla Jean Cotropia, Mills Shirley et al, Houston, TX, for Texas City, Texas, defendant.

William R. Pilat, Davis and Shank, Houston, TX, for League City, Texas, defendant.

### ORDER GRANTING DEFENDANT LEAGUE CITY'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiffs bring this action against Defendants Texas City, Texas ("Texas City") and League City, Texas ("League City")

alleging violations of due process and equal protection under the Fourteenth Amendment of the United States Constitution. Plaintiffs also have introduced a pendent state claim regarding the enforceability of League City's Ordinance No. 99–26. Now before the Court is Defendant League City's Motion for Summary Judgment, filed October 28, 1999. For the reasons stated below, the Motion for Summary Judgment is **GRANTED.**

## I. FACTUAL SUMMARY

Plaintiffs either participate in the distribution and sale of fireworks, or they own land that is leased to merchants that operate roadside fireworks stands. In November 1998, the City Council of Texas City adopted an ordinance banning the possession of fireworks within 5000 feet of city limits. On April 27, 1999, the City Council of League City passed similar legislation, labeled Ordinance No. 99–26, which prohibited the manufacture, sale, possession, or use of fireworks "within the area immediately adjacent and contiguous to the city limits extending ... five thousand feet (5000)." *Def.'s Memo.Supp.Summ.J.Ex. A at 4.* This regulation characterizes the presence of fireworks in such areas as "a common and public nuisance." *Id.* League City approved Ordinance No. 99–26 pursuant to its home-rule charter that allows the city to exercise all powers that have been or may later be granted to municipalities by the Constitution or the laws of the State of Texas. In this case, Texas law provides that "[t]he governing body of the municipality may ... prohibit or otherwise regulate the use of fireworks and firearms." Tex.Loc. Gov't Code Ann. § 342.003(a)(8) (Vernon Supp.1999). Additionally, League City's authority to enforce Ordinance No. 99–26 outside its territorial jurisdiction derives from another Texas statute that enables a home-rule municipality to "define and prohibit any nuisance within the limits of the municipality and within 5,000 feet outside the limits." *Id.*

§ 217.042(a). Moreover, Texas law acknowledges that such "municipalit[ies] may enforce all ordinances necessary to prevent and summarily abate and remove a nuisance." *Id.* § 217.042(b).

After passing its ban on fireworks, League City entered into an interlocal cooperation agreement with Texas City on July 27, 1999, through which Texas City agreed to allow League City to enforce Ordinance No. 99–26 in those portions of Texas City's extra-territorial jurisdiction ("ETJ") that are also located within 5000 feet of League City's city limits. Both the interlocal cooperation agreement and Ordinance No. 99–26 form the basis for Plaintiffs' suit.

Arguing that Ordinance No. 99–26 violates the Due Process and Equal Protection Clauses of the United States Constitution, and that it is impermissibly vague, Plaintiffs filed suit on June 22, 1999 asking this Court to declare both city's ordinances unconstitutional and to grant an injunction to prevent their enforcement.[1] Additionally, during the scheduling conference that took place on November 3, 1999, the Court allowed Plaintiffs to pursue claims based on the Ordinance's alleged noncompliance with Texas state law via summary judgment briefing, without having to amend the original complaint. With this permission, Defendant League City filed a counterclaim for Declaratory Judgment on October 28, 1999 requesting the Court to rule that League City may enforce Ordinance No. 99–26 against Plaintiffs within the ETJ of Texas City, to the extent that the enforcement area falls within 5000 feet of the municipal boundaries of League City.

## II. ANALYSIS

### A. *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment

---

1. The claims filed against Defendant Texas City do not form part of this summary judgment proceeding, as all matters of controversy existing between Plaintiffs and Defendant Texas City have now been settled.

as a matter of law. *See* FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.;see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691, 693 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* FED. R.CIV.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting FED.R.CIV.P. 56(e)).

**B.** *Does the Ordinance Violate the Due Process Clause of the Fourteenth Amendment?*

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall … deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. A violation of substantive due process occurs when the government deprives someone of liberty or property, or when the government works a deprivation of a constitutionally protected interest. Therefore, to state a claim for a violation of substantive due process, Plaintiffs must first prove the deprivation of a constitutionally protected life, liberty, or property interest, and then identify an official action that caused the constitutional deprivation. *See Johnson v. Houston Indep. Sch. Dist.,* 930 F.Supp. 276, 285 (S.D.Tex.1996) (citing *Blackburn v. City of Marshall,* 42 F.3d 925, 935 (5th Cir.1995)). If Plaintiffs successfully identify a property interest that has been deprived due to an ordinance enacted under the auspices of a municipality's police power, Plaintiffs then carry the burden of proving the ordinance's invalidity. *See Bibb v. Navajo Freight Lines,* 359 U.S. 520, 529, 79 S.Ct. 962, 967, 3 L.Ed.2d 1003 (1959) (holding that an exercise by the state of its police power is presumed to be valid when it is challenged under the Due Process Clause of the Fourteenth Amendment); *Price v. City of Junction,* 711 F.2d 582, 588 (5th Cir.1983) (finding that under Texas law, a party attacking an ordinance enacted pursuant to a municipality's police powers has the " 'extraordinary burden' " to show that " 'no conclusive or even con-

troversial or issuable fact or condition existed' " that would authorize passage of the ordinance (quoting *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792–93 (Tex.1982))); *National Foundation v. City of Fort Worth*, 415 F.2d 41, 47 (5th Cir. 1969) (noting that a municipal ordinance challenged as unconstitutionally arbitrary and discriminatory is to be examined "in light of the presumption of validity and reasonableness accorded a municipal ordinance"). To accomplish this, Plaintiffs must negate every conceivable argument that might support the basis for the ordinance, thus demonstrating that the regulation is not rationally related to a legitimate government interest. *See Goldblatt v. Town of Hempstead*, 369 U.S. 590, 596, 82 S.Ct. 987, 991, 8 L.Ed.2d 130 (1962) (noting that in order for a municipality to exercise police power it must appear that the interests of the public require such interference and that the means used are reasonably necessary for the accomplishment of its purpose without being unduly oppressive upon individuals).

■ Plaintiffs have failed to allege the deprivation of a constitutionally protected property interest that is not rationally related to an appropriate government objective. *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir.1996) ("[G]overnment action comports with substantive due process if the action is rationally related to a legitimate government interest."). Plaintiffs characterize the means by which League City attempts to further its interest in protecting the health, safety, and welfare of its citizens as arbitrary and therefore constitutionally unjustified. The Court, however, strongly disagrees with the assertion that League City has enacted Ordinance No. 99–26 in an arbitrary or discriminatory manner so as to violate due process rights. In fact, the Fifth Circuit and several Texas state appellate courts have already squarely addressed this issue. These courts have consistently upheld the enforcement of city ordinances prohibiting the sale, storage, and use of fireworks. *See Cohen v. Bredehoeft*, 290 F.Supp. 1001, 1005 (S.D.Tex.) (applying Texas law and finding that a city ordinance prohibiting the storage of fireworks did not violate the federal Due Process Clause), *aff'd*, 402 F.2d 61 (5th Cir. 1968); *Stoughton v. City of Fort Worth*, 277 S.W.2d 150, 153–54 (Tex.Civ.App.— Fort Worth 1955, no writ); *Parker v. City of Fort Worth*, 281 S.W.2d 721, 723–24 (Tex.Civ.App.—Fort Worth 1955, no writ) (both holding as valid ordinances which make it unlawful to sell or possess fireworks within 5000 feet of a city's borders, and finding that a permanent injunction against the storage or sale of fireworks within such an area did not amount to a deprivation of property without due process of law); *Cannon v. City of Dallas*, 263 S.W.2d 288, 290 (Tex.Civ.App.—El Paso 1953, writ ref'd n.r.e.) (validating a city code that prohibits the use, sale, or storage of fireworks within city limits after determining that the ordinance did not deprive the plaintiff of substantial property rights in violation of the Due Process Clause). These cases conclusively recognize a municipality's authority to declare fireworks a public nuisance.[2]

Given this backdrop, the Court holds that Ordinance No. 99–26 amounts to a valid and reasonable exercise of League City's general police power. Other jurisdictions have upheld similar ordinances, finding that fireworks bans are reasonably necessary to serve the public interest without being unduly oppressive to due process rights. *See, e.g., Treadgill v. State*, 160

---

**2.** Contrary to Plaintiffs' assertions, League City does not have to present evidence showing that Plaintiffs operate their particular fireworks stands in a manner that specifically causes harm to the League City community, because the Court finds that fireworks sold to the general public are in and of themselves inherently dangerous products. *See Cannon*, 263 S.W.2d at 290 ("[I]t is common knowledge that fireworks and firecrackers have always been dangerous...."). And unlike what Plaintiffs allege, the dangers associated with the sale of fireworks are not eliminated merely because a heightened amount of state regulation is now directed at fireworks businesses.

Tex.Crim. 658, 275 S.W.2d, 658, 664 (1954) (acknowledging that the sale of fireworks may be prohibited by a municipality in the exercise of its police power); *Dixie Fireworks Co. v. McArthur*, 218 Ga. 735, 130 S.E.2d 731, 732–33 (1963) (holding that the seizure of fireworks pursuant to a state fireworks law did not violate the plaintiff's property rights under the Due Process Clause of the United States Constitution); *Hutchinson v. Board of Alderman*, 423 So.2d 1229, 1230 (La.Ct.App.1982) (ruling that a city's fireworks ordinance does not violate the Due Process Clause of the federal Constitution because the statute was a reasonable means for attaining the legitimate end of preventing the proliferation of fireworks outlets that, if allowed, would impose unacceptable burdens on the police department in regulating such businesses and protecting the public welfare); *South Dakota Dep't of Pub. Safety ex rel. Melgaard v. Haddenham*, 339 N.W.2d 786, 790 (S.D.1983) (noting that the power of the government to regulate and restrain the use of fireworks does not represent an invalid exercise of the state's police power and does not amount to a taking of property without just compensation); *B & B Distrib. Co. v. Metropolitan Nashville*, 667 S.W.2d 751, 753 (Tenn. Ct. App.1983) (holding that the inclusion of the terms "use" and "possess" in a state law prohibiting the possession, storage, use, manufacture, or sale of fireworks in counties exceeding a certain population do not render the state's exercise of police power unduly oppressive or unconstitutional); *see also City of Akron v. Budiani*, 52 Ohio App.2d 116, 368 N.E.2d 851, 853–54 (1976) (upholding a trial court's determination that a permit requirement imposed by a city for the storage and sale of fireworks is constitutional as a valid exercise of the city's

police power). Simply put, the Court views Ordinance No. 99–26 as rationally related to a legitimate government interest. *See City of Detroit v. Qualls*, 434 Mich. 340, 454 N.W.2d 374, 386–87 (1990) (agreeing with a city's assertion that a city ordinance restricting the use of fireworks prevents fires and explosions, thereby protecting the safety of the homes, people, and businesses located in the city).

The reasonableness of Ordinance No. 99–26 as a means of properly regulating fireworks is also demonstrated by the fact that the law does not conflict with any Texas statute governing explosives or fireworks. In fact, League City's measure comports with Texas law and serves to ensure the protection of the city's citizens against the destructive nature of explosives and the danger to life and property such pyrotechnical products present.[3] To underscore this point, one need not look any further than recent newspaper headlines to understand the enormous danger fireworks continue to present to communities. *See Fireworks Explosion in Candy Store Kills at Least 8 in Mexico,* HOUST. CHRON., Oct. 19, 1999, at A12 ("As many as eight people died Monday in an explosion at a fireworks shop hidden in the back of a candy store that was so severe, it tossed body parts to neighboring roof tops and as far away as 300 feet."); *Explosions Jolt City in Mexico,* HOUST.CHRON., Sept. 27, 1999, at A1 (describing a series of explosions caused by fireworks that ripped through a crowded market area in the central Mexican city of Celaya, killing 63 people and injuring hundreds); *cf. Ace Fireworks Co. v. City of Tacoma,* 76 Wash.2d 207, 455 P.2d 935, 937 (1969) ("The power of government to regulate

3. Texas law characterizes fireworks as a public nuisance and vests home-rule cities with the power to regulate public nuisances up to a distance of 5000 feet from city limits. *See Treadgill,* 275 S.W.2d at 664 (upholding a city of Houston ordinance making it unlawful to sell fireworks within city limits and within 5000 feet outside city limits). As a valid exercise of League City's police power, the Ordi-

nance complies with the mandates of Texas state law. *See Alpha Enter., Inc. v. City of Houston,* 411 S.W.2d 417, 420–21 (Tex.Civ. App.—Houston 1967, writ ref'd n.r.e.) (allowing a city ordinance regulating the storage and sale of fireworks because the municipality was acting within its powers in designating the presence of fireworks within the city as a nuisance).

and restrain the use of fireworks cannot be denied. Indeed, considering the nature of the product, that power is better described as a duty when we think of the destructive nature of explosives and the danger to life and property attendant upon its use." (emphasis omitted)). Therefore, the Court finds that Ordinance No. 99–26 advances the League City's health and safety goals, thereby furthering a significant and proper governmental interest.[4]

In the end, Plaintiffs have failed to prove a cause of action for a violation of substantive due process. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiffs' Due Process claims is **GRANTED.**

## C. Does the Ordinance Violate the Equal Protection Clause of the Fourteenth Amendment?

▬▬▬▬ Plaintiffs next claim that Defendant violated their equal protection rights because Defendant's actions are not rationally related to any governmental interest. The Equal Protection Clause requires similar treatment of all persons similarly situated. U.S. CONST. amend. XIV; *see City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Furthermore, it is well-established that a party wishing to pursue an equal protection claim must prove the existence of purposeful discrimination motivating the alleged state action. *See Washington v. Davis*, 426 U.S. 229, 246–50, 96 S.Ct. 2040, 2051–52, 48 L.Ed.2d 597 (1976) ("The requirement of purposeful discrimination is a common thread running through [equal protection] cases ...");

*Vera v. Tue*, 73 F.3d 604, 609–10 (5th Cir.1996) (reiterating that the Equal Protection Clause is violated only by intentional discrimination). In this case, because the challenged ordinance affects a purely economic activity, the law does not establish a suspect classification nor does it trammel a fundamental right. As a result, the test applied to Plaintiffs' equal protection claim is the same as applied to a due process claim: Plaintiffs must demonstrate that no rational basis exists for implementing the ordinance. *See Medina v. State*, 986 S.W.2d 733, 736 (Tex.App.—Amarillo 1999, pet. ref'd) (noting that a "[p]arty challenging a statute on equal protection grounds has the burden to show that the statutory classification is not rationally related to a legitimate state interest where interests other than fundamental rights or suspect classification are affected, and that the classification must discriminate against similarly situated individuals.").

▬▬▬▬ The Court finds that Plaintiffs have failed to sufficiently support their claims based on equal protection. Ordinance No. 99–26 does not impose restrictions on certain sellers or users of fireworks which are not also imposed on others. As a result, Plaintiffs have not produced evidence of any similarly situated persons who have received more favorable treatment by Defendants. Such evidence is necessary to support an equal protection claim. *See, e.g., Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir.1996) ("We may conduct an equal protection inquiry only if the challenged government action classifies or distinguishes between two or more relevant groups."). Instead, the ordinance is designed to ensure that no individual is

---

4. Plaintiffs' also pose an Oliver Stone-like conspiracy argument, which posits that League City has schemed with Texas City to eliminate all fireworks in Galveston County. This allegation is also without merit. As stated previously, Ordinance No. 99–26 serves legitimate public safety interests. Contrary to what Plaintiffs argue, League City is not required to prove that past fireworks-induced accidents have occurred within 5000 feet of its city limits, in order to

show a legitimate governmental interest. Instead, League City has shown its ordinance to be proactive in that it aims to prevent future accidents—accidents that *have* occurred in other communities. The Court finds it ludicrous for Plaintiffs to suggest that the United States Constitution requires Defendant to sustain a city-wide fireworks disaster before its health and safety concerns become legitimate.

permitted to sell or use fireworks within 5000 feet of League City. Thus, the ordinance treats all individuals exactly the same with respect to the sale or use of fireworks within 5000 feet of League City's city limits. The Fifth Circuit has affirmed that such an ordinance does not implicate the Equal Protection Clause. *See Cohen,* 402 F.2d at 61 (upholding a district court finding that an ordinance which prohibited the storage of fireworks within a city and which treated all fireworks distributors equally did not violate constitutional rights). Moreover, as expounded upon above, League City has articulated a rational and legitimate basis for proscribing such commercial transactions: protecting public safety by attempting to curtail the incidence of fires, explosions, and injuries caused by fireworks. The ordinance is therefore reasonably designed to deal with a vital local concern. In the end, Plaintiffs have not proven sufficient cause to reject the ordinance as being in violation of the Equal Protection Clause.[5]

Accordingly, Defendant's Motion for Summary Judgment on Plaintiffs' claims under the Equal Protection Clause is **GRANTED.**

D. *Is the Ordinance Constitutionally Vague?*

■■■■ The Court next addresses Plaintiffs' claims that Ordinance No. 99–26 is unconstitutionally vague. To prevail on these grounds, Plaintiffs must prove that the ordinance and the interlocal agreement are so vague, indefinite, ambiguous, or uncertain as to violate the Due Process Clause of the United States Constitution. The determinative factor in deciding if a statute is unconstitutionally vague is whether there is a reasonable degree of common understanding as to what is encompassed by the prohibition of the ordinance. *See Bouie v. City of Columbia,* 378 U.S. 347, 350, 84 S.Ct. 1697, 1701, 12 L.Ed.2d 894 (1963) (noting that a statute that forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates an essential element of due process). If Plaintiffs cannot make such a showing, the ordinance and the interlocal agreement cannot be deemed void nor unenforceable. In this case, Plaintiffs allege that a genuine dispute exists regarding whether the law is authorized under Texas law. Additionally, Plaintiffs assert that the ordinance is vague in that it attempts to impermissibly regulate fireworks within the ETJ of Texas City. Despite its appreciation of these clever arguments, the Court finds them untenable.

■■■■ Turning to Plaintiffs' first vagueness claim, the Court concludes that there is no doubt about the legislative proscription regarding the authority of a home-rule municipality such as League City to pass a fireworks ban that extends 5000 feet beyond city boundaries. An ordinance is constitutional when it is narrowly drawn, does not vest municipal officials with the undefined power to determine what people can do, is a reasonable means of achieving legitimate social interests, and is drafted clearly enough that persons of normal intelligence can discern its mean-

**5.** Most equal protection claims arising from challenges to fireworks ordinances involve laws governing the issuance of permits to sell fireworks. In these cases, plaintiffs often argue that city defendants have discriminated against certain fireworks distributors in the approval of fireworks permits. Unlike the case at bar, these examples may raise legitimate equal protection issues. But even in situations that indeed require more in-depth equal protection analysis, courts have typically refrained from rejecting an ordinance as violating equal protection guarantees. *See,* e.g., *Haddenham,* 339 N.W.2d at 792 (holding as permissible under the Equal Protection Clause a law prohibiting nonresident sellers of fireworks from selling fireworks to nonresident purchasers during a limited period of time without first verifying that each purchaser is a licensed fireworks wholesaler, manufacturer, or permit holder). This includes the Fifth Circuit, which, in applying Texas law, has refused to recognize an equal protection claim based on a city ordinance prohibiting the storage of fireworks within a city's borders. *See Cohen,* 402 F.2d at 61.

ing. *See id.* This particular ordinance meets these requirements. It simply bans fireworks within a 5000–foot radius of city limits. The ordinance is therefore drafted clearly enough for individuals of ordinary intelligence to discern what conduct is prohibited.

Furthermore, the power of a home-rule city to control fireworks derives from state provisions. In this case, Texas law specifically authorizes a municipality to enact regulations that restrict the sale, use, and possession of fireworks for a distance of 5000 feet outside city boundaries. *See* Tex.Loc. Gov't Code Ann § 217.041(a); *Treadgill,* 275 S.W.2d at 658 (noting that it would be idle to say that in the exercise of its police power a city may prohibit the operation of a nuisance within the corporate limits but may not do so if the nuisance is beyond the limits of the city but is so situated as to constitute the same nuisance or hazard to the public health and safety as if within the city limits). The ordinance enacts the same restrictions as permitted by state statute. Because the ordinance does not go beyond the requirements of state law, it is therefore in accord with Texas legislative intent. There is nothing vague nor ambiguous about the wording of this portion of the ordinance. Thus, the Court rejects Plaintiffs' challenge to League City's passage of the ordinance.

The second vagueness allegation also lacks merit. Plaintiffs contend that the ordinance is vague because it allows League City to regulate fireworks within the ETJs of other municipalities that may not have the authority to enforce a fireworks ban. As noted above, however, Texas law clearly provides League City with the right to enforce its public nuisance laws up to 5000 feet beyond its city limits—it does not impose limitations to the extraterritorial application of public nuisance ordinances. This is precisely what League City's ordinance requires. There is no uncertainty as to League City's authority to require this action because it derives directly from a Texas statute.

In fact, the Court finds League City prudent to pass such a regulation. Any accident or explosion that might occur in the 5000–foot ring surrounding League City likely would have a pernicious impact on the city. In the event of a fireworks calamity, city firefighters might be called to extinguish flames and to prevent a fire from spreading to buildings or homes located within League City. Additionally, it is easy to envision a fireworks explosion affecting city sewer/water operations.[6] Worst of all, a pyrotechnic accident may require city hospitals to treat those injured. Simply put, Ordinance No. 99–26 serves to reduce the incidence of personal or property damage caused by fireworks. Texas law grants League City this right, and the Court finds that the ordinance itself includes requirements that are not so vague or ambiguous as to prevent a reasonable interpretation of its mandates. Therefore, Defendant's Motion for Summary Judgment regarding Plaintiffs' vagueness claims is **GRANTED.**

---

6. Plaintiffs allege that most of the unincorporated area falling within 5000 feet of League City's municipal boundary consists of "small, undeveloped lots that do not receive any city services such as sewer or water from the surrounding municipalities." *Pls.' Resp. to Def's Mot. for Summ. J. at 5; see Pate Aff. Ex. E at 2* ("To the best of my knowledge, the majority of the land that stands occupy does not receive any city services, such as water or sewer, from any of the surrounding municipalities. Thus, there are no residential neighborhoods near the stands."). Plaintiffs' evidence fails to conclusively prove that League City does not offer city services to any portion of the land located within 5000 feet of its municipal boundary. But even if that were the case, the fact remains that any fireworks disaster occurring close to League City's borders could threaten property, and sewer or water systems existing within League City's city limits. Such a situation would likely require League City to provide fire services and other forms of relief. The fact that Plaintiffs report that "there have not been any significant fires or injuries attributable to fireworks" in League City does not detract from the reality that an accident could happen in the future. League City's ordinance attempts to eliminate this risk.

After carefully analyzing all of Plaintiffs' constitutional claims, the Court finds League City's Ordinance No. 99–26 valid and enforceable—and not violative of the Due Process Clause or the Equal Protection Clause. Consequently, Defendant League City's Motion for Summary Judgment as to these claims is **GRANTED.**

### E. Is the State Law Claim Viable?

 Plaintiffs also seek to have the Court grant a declaratory judgment concerning the enforceability of the ordinance under Texas law.[7] Federal courts have discretion to decide pendent state law claims if the federal and state law causes of action arise out a common nucleus of operative facts. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Invoking this authority, the Court now turns to Plaintiffs' pendent state claim.

 Plaintiffs argue that Texas law prohibits League City from enforcing its fireworks ordinance within the ETJ of Texas City. The Court disagrees. A public nuisance is anything that works injury, harm, or prejudice to an individual or the

public or that obstructs, impairs, or destroys the reasonable, peaceful, and comfortable use of property. See Parker, 281 S.W.2d at 723. In this case, the Court presumes Ordinance No. 99–26 to be valid, and before the Court may declare it invalid, it must appear so by clear and convincing proof—especially if the law promotes the health, safety, and general welfare of the public. See Cannon, 263 S.W.2d at 289; Commonwealth v. Bristow, 185 Pa.Super. 448, 138 A.2d 156, 161 (1958). Texas courts already have upheld the validity of home-rule municipal ordinances that prohibit the sale of fireworks for a distance of 5000 feet outside city limits, see Treadgill, 275 S.W.2d at 662–63, based on a Texas statute that allows a "municipality [to] define and prohibit any nuisance within the limits of the municipality and within 5,000 feet outside its limits" Tex.Loc. Gov't Code Ann. § 217.042(a). The statute is unambiguous in this regard. Here, League City has, in accordance with Texas law, properly declared fireworks to be a nuisance; therefore, it has not extended its authority to enforce Ordinance No. 99–26 outside city limits simply by virtue of the interlocal agreement with Texas City—as Plaintiffs attempt to argue.[8] Because

---

7. Plaintiffs did not specifically allege claims under Texas law, but at the scheduling conference held on November 3, 1999, both parties requested that the Court rule whether the ordinance is valid under state law. The Court agreed to decide the issue.

8. Plaintiffs make much of the fact that "Texas City is unable to enforce its own ordinance" in the 5000–foot area surrounding League City's border, and that this area also falls outside League City's "own ETJ, thereby prohibiting enforcement." Pls.' Resp. to Def.'s Mot. for Summ. J. at 13. To support these claims, Plaintiffs highlight a 1997 Texas Attorney General Opinion, which states that "[w]e have found no support for the proposition that the Interlocal Cooperation Act allows a city to extend its authority solely by agreement…." Op. Tex. Att'y. Gen. No. 97–055, 1997 WL 294360, at *4 n. 4 (1997). Plaintiffs' reliance on this Attorney General Opinion, however, is misplaced. In that situation, the City of Wylie sought guidance as to whether it could enforce its fire ordinance in an unincorporated area of the county where the city had

contracted with the county to provide fire protection service. See id. In response, the Attorney General noted that "the city may not enforce an ordinance with respect to activity outside city limits under the authority of Local Government Code section 217.042 unless the city has enacted an ordinance declaring the activity to constitute a nuisance." See id. at *2. Therefore, according to the Attorney General, until the City of Wylie declared the activity at issue a public nuisance, the city could not claim to be observing the statutory provisions of Section 217.042, which allows a home-rule municipality to prohibit a nuisance for up to 5000 feet outside city limits. Given that it had not declared a nuisance, the city of Wylie then asked whether its interlocal agreement with the county could suffice as proper grounds for enforcing its laws extraterritorially. The Attorney General responded "no" indicating, as Plaintiffs note, that the Interlocal Cooperation Act does not "allow[ ] a city to extend its authority solely by agreement." Id. at *4 n. 4.

The Court's decision in this case upholding the validity of League City's extraterritorial

League City has observed the statutory provisions of this law, there is no question that League City has the authority to enforce its ordinance 5000 feet beyond its city borders.

The unique twist this case presents is that a portion of the land extending 5000 feet from the League City border apparently lies within the ETJ of Texas City.[9] According to Plaintiffs, League City's original municipal boundary was quite small, but over the years as the city annexed additional land, its borders expanded. Plaintiffs posit that today League City's borders abut the ETJ of Texas City.[10] Therefore, Plaintiffs reason that the 5000-foot extraterritorial extension included in

the League City ordinance falls onto Texas City's ETJ. Thus, the argument goes, League City no longer possesses ETJ over the land that forms the ETJ of Texas City, because a city's ETJ cannot continue to expand every time a city annexes property. The Court discounts this proposition for a number of reasons.

First, on a practical level, Plaintiffs' reasoning would controvert public policy and stand in direct opposition of Texas law, which grants extraterritorial jurisdiction to cities that implement public nuisance regulations. The legislature granted extraterritorial powers to cities because of the ever present threat public nuisances such as fireworks pose to municipalities. To com-

application of Ordinance No. 99–26 does not conflict with the Attorney General's ruling. Unlike the Wylie case, League City did follow the statutory provisions of Section 217.042 when it declared in its ordinance that fireworks are a public nuisance. As a result, League City's agreement with Texas City does not, as Plaintiffs suggest, "extend League City's authority solely by agreement." Instead, League City has, in accordance with the Attorney General's Opinion, an independent statutory basis for enforcing the ordinance 5000 feet outside its city limits. Case law supports such an interpretation. *See City of Austin v. Jamail*, 662 S.W.2d 779, 782 (Tex.App.—Austin 1983, writ dism'd w.o.j.); *City of West Lake Hills v. Westwood Legal Def. Fund*, 598 S.W.2d 681, 686 (Tex.Civ.App.—Waco 1980, no writ) (both stating that generally a city can exercise its police powers only within that city's corporate limits, unless a statute or the Texas Constitution expressly extends its authority).

The Court also finds additional support for validating the interlocal cooperation agreement that allows League City to enforce its ordinance 5000 feet from city limits—even in areas that may fall within Texas City's ETJ. In an Opinion written after the one cited by Plaintiffs, the Texas Attorney General reviewed whether a municipal court has jurisdiction over those violations of a municipal nuisance ordinance that occur outside city limits. After evaluating the issues, the opinion states that "the statute authorizing cities to prohibit nuisances beyond their borders allows cities to 'enforce all nuisances necessary to prevent and summarily abate and remove a nuisance.' We conclude in accordance with *Treadgill* that the [ ] municipal court has implied authority to hear nuisance cases arising from conduct outside city lim-

its." *Op.Tex. Att'y Gen. No. JC–0025, 1999 WL 219333, at *2 (1999)* (quoting Tex.Loc. Gov't Code Ann. § 217.042(b)). Therefore, in response to Plaintiffs' charge that the interlocal cooperation agreement in dispute here includes provisions that League City does not have the power to enforce on its own, the Attorney General's opinion indicates that Texas law supplies League City with independent authority to apply its ordinance outside city boundaries.

9. Unfortunately, Plaintiffs have failed to provide the Court with any evidence substantiating this claim. Nevertheless, the Court proceeds to review the validity of the ordinance, Plaintiffs' omission aside.

10. Once again, Plaintiffs have offered no proof to support these geographical assertions surrounding the boundary changes that occurred along the border between Texas City and League City. The Court finds this omission rather odd given that Plaintiffs hinge much of their argument on that fact that because Texas law prevents "the expansion of one city's ETJ, by either annexation, request or increase in population, into any area in the existing ETJ of another city," League City possesses no ETJ along its border with Texas City. *Pls.' Resp. to Def.'s Mot. for Summ. J. at 11.* Without evidentiary backing, the Court cannot offer a conclusion about these particular claims. The Court, however, does have proof that Ordinance No. 99–26's extraterritorial scope comports with Texas state law. As the Court has attempted to make clear, state statutory authority permits League City to enforce its ordinance within 5000 feet of its city border—even if that area constitutes part of Texas City's ETJ.

bat these public nuisances, the legislature supplied municipalities the right to regulate the actions that endanger the public welfare. If this Court were to yank away League City's capacity to enforce its fireworks ordinance, it would, in effect, render the ordinance's extraterritorial prong moot, thereby creating a swath of "no-man's land" between League City and Texas City in which no local governing body would be permitted to protect citizens from the dangers of fireworks. *See City of Houston v. Savely*, 708 S.W.2d 879, 883 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) ("If possible, a court should place upon a statute a construction that will not result in injustice, unreasonableness, prejudice to the public interest, or absurd consequences.").[11] The Court rejects Plaintiffs' attempt of unnecessarily limit a city's authority to protect the public from a serious public nuisance.

■■■■ Second, Plaintiffs have not set forth adequate proof that the Texas legislature intended to limit the extraterritorial enforcement of a municipality's public nuisance law only to that city's own ETJ. In construing a statute, the Court's primary objective must be to give effect to the intent of the Legislature. *See Liberty Mut. Ins. Co. v. Garrison Contractors,*

*Inc.,* 966 S.W.2d 482, 484 (Tex.1998); *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997). When the statute's language is unambiguous, the intent of the legislature may be determined from the plain meaning of the words of the statute. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex.1993). Here, the legislature specified its intent in the Code itself. Sections 42.001 and 217.041 of the Texas Local Government Code provide cities with limited extraterritorial jurisdiction (up to 5000 feet) to enforce public nuisance laws in order to "promote and protect the general health, safety, and welfare of persons residing in *and* adjacent to the municipalities." TEX.LOC. GOV'T CODE ANN. § 42.001 (emphasis added). No where in the statute authorizing municipalities to regulate public nuisances does it require a city to limit the 5000–foot extraterritorial reach only to those areas that form part of the enforcing municipality's own ETJ; instead Section 42.001 indicates that the Legislature intended the 5000–foot provision to be broadly applied. Thus, it appears reasonable to conclude that the intent of the legislature was to give the benefit of the statute not only if the "5000 feet" falls within a city's own ETJ, but to also extend that benefit even if the "5000 feet" touches upon another municipality's ETJ.[12] To hold

11. Plaintiffs' assertions defy common sense. By Plaintiffs' own logic, if Texas City is prevented by state statute from enforcing its fireworks ordinance more than 5000 feet from city limits, and assuming that League City does not have an ETJ in the area adjacent to Texas City's ETJ, then it follows that no city has the authority to protect the citizenry living in either municipality from fireworks hazards located in this "no-man's land" (that being the patch of land bordering League City city limits and falling within that portion of Texas City's ETJ that lies more than 5000 feet from its city limits but within 5000 feet of League City's city boundary). Such a conclusion is nonsensical and undercuts the very purpose of allowing municipalities to reduce the dangers presented by public nuisances. Recognizing this, League City and Texas City have agreed to allow League City to enforce its ordinance 5000 feet outside the city limits of League City—despite the fact that such an area may or may not be part of Texas City's exclusive ETJ. Plaintiffs' argument also defies the mandate the Texas legislature has given

municipalities to enforce public nuisance laws extraterritorially. In responding to this forceful rebuttal, Plaintiffs cannot point to a single case, statute, or attorney general opinion stating either that ETJ laws trump the extraterritorial application of public nuisance laws or that municipalities are barred from drafting agreements that further state statutory authority regarding the regulation of fireworks. Simply put, the Texas Legislature did not attach a limitation to the 5000–foot requirement, and the Court declines to read one into the statute.

12. With the enactment of the interlocal agreement between Texas City and League City, it also is clear that Texas City does not object to League City's extraterritorial enforcement of its ordinance, even though it may affect Texas City's ETJ. As explained previously, Texas City's approval makes sense because the 5000–foot provision, as Plaintiffs have admitted, forecloses Texas City from enforcing its fireworks law in the area in which League City seeks to enforce its ordinance.

otherwise would be to negate the legislative intent. *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex.1994) (prohibiting courts from limiting or enlarging, by implication, the meaning of any word or term in a statute beyond its obvious reading); *Blair v. Razis*, 926 S.W.2d 784, 787 (Tex. App.—Tyler 1996, reh'g overruled) (noting that a court is not free to formulate forced definitions or interpretations of statutory terms). For their part, Plaintiffs have failed to point to case law explicitly suggesting an alternative interpretation. As a result, the Court will not issue a decision in favor of Plaintiffs that is premised upon conjecture and unsupported by any case law or statute.

Third, the Court finds that Chapter 791 of the Texas Government Code also supports the validity of the interlocal cooperation agreement entered into by League City and Texas City. That statute authorizes a local government to "contract or agree with another local government to perform governmental functions and services," TEX. GOV'T CODE ANN. § 791.011(a) (Vernon 1988), but only "to the extent that each party 'is authorized to perform [the function or service] individually.' " *Id.* § 791.011(c)(2). "Governmental functions and services" is defined to include the provision of fire protection and public health and welfare. In this case, League City has contracted and agreed to enforce its ordinance in the 5000–foot swath of land that perhaps extends into Texas City's ETJ. Specifically, the agreement notes that fire officials are among those who can enforce Ordinance No. 99–26. The Court finds that the interlocal cooperation agreement comports with League City's statutory authority to enforce its ordinance 5000 feet outside its city boundary and with Texas City's ability to allow another municipality to apply public nuisance laws in its ETJ.[13] Moreover, the interlocal agreement reinforces the purpose of the Interlocal Cooperation Act, which is to "increase the efficiency and effectiveness of local governments by authorizing them to contract, to the greatest possible extent, with one another and with agencies of the state." *Id.* § 791.001. Furthermore Section 791.012 allows "[l]ocal governments that are parties to an interlocal contract for the performance of a service may, in performing the service, apply the local law of a party as agreed by the parties." In this case, Texas City and League City have agreed to apply League City law. These actions were all done by express provision of the Texas Government Code.[14] Given these arguments, Plaintiffs' request for declaratory judgment is **DENIED,** and Defendant's Motion for Summary Judgment as to Plaintiffs' state-based claim, evaluated in light of its

---

13. Plaintiffs have not proven that Texas City cannot regulate laws that affect its own territory. While Texas City's fireworks ordinance may only extend 5000 feet from city boundaries, Texas City nevertheless retains the authority to control laws that involve areas within its ETJ.

14. As part of its presentation, Defendant League City points out that Texas law also permits municipalities to allocate overlapping ETJs so as to allow interlocal cooperation agreements such as the one at issue in this case. *See* TEX. LOCAL CODE ANN. § 42.901(a) (Vernon 1999) ("If, on August 23, 1963, the extraterritorial jurisdiction of a municipality overlapped the extrajurisdiction of one or more other municipalities, the governing bodies of the affected municipalities may apportion the overlapped area by a written agreement approved by an ordinance or a resolution adopted by the governing bodies."). Without knowing the configuration of the boundaries between League City and Texas City, the Court is not in a position to render a decision as to whether the two cities in fact share a common ETJ. But given the Court's decision validating the extraterritorial enforcement of Ordinance No. 99–26, the Court need not rely on Defendant's arguments concerning a possible overlap in ETJ.

If, however, evidence had been presented to that effect, the Court would evaluate the interlocal agreement liberally so as to serve the public interest. *See City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref. n.r.e). What is undisputed is that both city councils approved the interlocal cooperation agreement, and, in accordance with state statute, that document states the purpose, terms, rights, and duties of the contracting parties.

**764**

Counterclaim for Declaratory Judgement, is **GRANTED.** The Court specifically finds that League City may enforce Ordinance No. 99–26 against Plaintiffs in the ETJ of Texas City, to the extent that the enforcement area is also within 5000 feet of the municipal boundaries of League City.

### III. CONCLUSION

After carefully examining the issues presented in this case, the Court finds Ordinance No. 99–26 constitutionally valid and therefore enforceable. Additionally, the Court holds that the ordinance is not limited to those areas that are within 5000 feet of League City's city limits and that are also within League City's own ETJ; rather, League City may enforce its ordinance in any area within 5000 feet of its city limits. Consequently, Defendant League City's Motion for Summary Judgment and Defendant's Counterclaim for Declaratory Judgment are both **GRANTED,** and all of Plaintiffs' claims asserted against Defendant League City in this action are hereby **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs, attorneys' fees, and expenses incurred to date. The parties are further **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider and the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**