ACCEPTED
04-15-00733-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
5/13/2016 2:00:58 PM
KEITH HOTTLE
CLERK

No. 04-15-00733-CV

FOURTH COURT OF APPEALS

SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
05/13/16 2:00:58 PM
KEITH E. HOTTLE
Clerk

THE CITY OF HELOTES, TOM SCHOOLCRAFT, IN HIS CAPACITY AS MAYOR OF HELOTES, RICK SCHRODER, IN HIS CAPACITY AS HELOTES CITY ADMINISTRATOR, AND ERNEST CRUZ, IN HIS CAPACITY AS HEAD OF THE HELOTES DEVELOPMENT SERVICES DEPARTMENT,

Appellants,

v.

THE TEXAS ASSOCIATION OF BUILDERS AND THE GREATER SAN ANTONIO BUILDERS ASSOCIATION,

Appellees.

_____

On Appeal from the 407th Judicial District Court, Bexar County, Texas
Trial Court Case No. 2014-CI-07817, The Honorable Karen H. Pozza, Presiding

_____

APPELLEES' RESPONSE TO
APPELLANTS' MOTION TO ABATE APPEAL

_____

SARA MURRAY
smurray@langleybanack.com
State Bar No. 14729400
PAUL A. FLETCHER
pfletcher@langleybanack.com
State Bar No. 00795980
LANGLEY & BANACK, INC.
745 East Mulberry, Suite 900
San Antonio, TX 78212-3166
Telephone: (210) 736-6600
Facsimile: (210) 735-6889

ATTORNEYS FOR APPELLEES
TEXAS ASSOCIATION OF BUILDERS AND
GREATER SAN ANTONIO BUILDERS
ASSOCIATION

To the Honorable Fourth Court of Appeals:

Pursuant to the Court's May 2, 2016, order, Appellees the Texas Association of Builders ("TAB") and the Greater San Antonio Builders Association ("GSABA") file this Response to Appellants' Motion to Abate Appeal, showing the Court:

## I. INTRODUCTION

1. On April 29, 2016, Appellants filed their Motion to Abate Appeal ("Motion"), asking the Court to abate the above-referenced appeal pending disposition of Cause No. 15-0106, *Town of Lakewood Village v. Bizios* ("*Bizios*"), currently under submission on petition for review in the Supreme Court of Texas.

2. Appellants believe that abatement is necessary because the above-referenced appeal and *Bizios* both involve, in part, "questions regarding the ability of a general law municipality to enforce its building codes and regulations within its extraterritorial jurisdiction ('ETJ')." Motion at ¶ 1; *see also* Motion at ¶ 2. Appellants further believe that the Supreme Court's ruling in *Bizios* will "control the major issue facing the parties in this appeal." Motion at ¶ 2. According to Appellants, the requested abatement will also prevent this Court from having to "expend its time and resources by hearing arguments and issuing three separate rulings" in the three appeals that the City of Helotes has filed in this Court, which rulings Appellants believe "may end up conflicting with the ruling in" *Bizios* and perhaps cause unspecified "'needless uncertainty and confusion.'" Motion ¶ 4.

3. Because TAB and GSABA did not agree to the Motion when Appellants'

counsel asked to confer, the Court has given TAB and GSABA an opportunity to respond before ruling on the Motion. TAB and GSABA appreciate the Court's concern about whether an abatement of this appeal would be appropriate, and they acknowledge that the Supreme Court's disposition of *Bizios* could possibly affect some issues raised in the present appeal. TAB and GSABA, however, did not agree to the Motion for the following reasons, which they respectfully ask the Court to consider:

## II. ANALYSIS

### A. Key procedural differences distinguish *Bizios* from this appeal.

4.      *Bizios* is procedurally very different from the present appeal. *Bizios*, for instance, is an interlocutory appeal of a trial court's order granting the Town of Lakewood Village temporary injunctive relief to stop construction of Bizios's house in the Town's ETJ because Bizios did not obtain a Town building permit and pay the Town's applicable permit fees. The standard of review in *Bizios* is abuse of discretion. *See, e.g., Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978); *Galindo v. Border Fed. Credit Union*, No. 04-08-00676-CV, 2009 WL 700836, at *1 (Tex. App.—San Antonio Mar. 18, 2009, no pet.) (mem. op.) (citing *Davis*). On interlocutory appeal of a temporary injunction, moreover, the main issue is whether the trial court abused its discretion by granting temporary injunctive relief to preserve the status quo pending trial on the merits. *See, e.g., Butnaru*, 84 S.W.3d at 204; *Davis*, 571 S.W.2d at 861-62; *Galindo*, 2009 WL 700836, at *1. The Supreme

2

Court should only consider whether the trial court properly exercised its discretion, and should not reach the underlying merits of the Town's claim for injunctive relief. *See, e.g., Butnaru*, 84 S.W.3d at 204; *Davis*, 571 S.W.2d at 861-62; *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, No. 04-14-00152-CV, 2014 WL 5463956, at *2 (Tex. App.—San Antonio Oct. 29, 2014, pet. denied) (mem. op.).

5. In contrast to *Bizios*, the present appeal is from a final judgment on the merits of TAB and GSABA's claims for declaratory and injunctive relief seeking to stop the City's illegal and unconstitutional enforcement of certain Helotes building regulation ordinances in its ETJ. *CR1-12, 17-26*. The *de novo* standard of review applies in the present appeal of cross-motions for summary judgment. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Martinez v. State Office of Risk Mgmt.*, No. 04-14-00558-CV, 2016 WL 548115, at *4 (Tex. App.—San Antonio Feb. 10, 2016, no pet.) (mem. op.).

6. Moreover, as the following chart illustrates, the issues raised by Petitioner in *Bizios* differ from those raised by Appellants in the present appeal:

| Petitioner in *Bizios*<br>(*Petitioner's Brief on the Merits at xiii*) | Appellants in the Present Appeal<br>(*Appellants' Brief at vi -vii*) |
|---|---|
| "Whether the Town has, and all Texas municipalities have, the statutory authority to apply *subdivision rules* for *development* to its ETJ." (emphasis supplied) | |

| Petitioner in *Bizios*<br>(*Petitioner's Brief on the Merits at xiii*) | Appellants in the Present Appeal<br>(*Appellants' Brief at vi -vii*) |
|---|---|
| | "Whether a general law municipality is prohibited by the Texas Local Government Code from enforcing any of its *building codes and regulations* within its extraterritorial jurisdiction." (emphasis supplied) |
| "Whether the respondent has vested rights to a 1995 plat." | |
| | "Whether TEX. LOC. GOV'T CODE ANN. § 51.003 bars the filing of this lawsuit more than 20 years after the original ordinance was enacted by the City of Helotes." |
| | "Whether Appellees proved the necessary facts under TEX. CIV. PRAC. & REM. CODE § 37 [sic] for an award of attorneys' fees and whether the trial court erred in granting the award of those fees." |
| | "Whether the Interlocal Agreement between the City of Helotes and Bexar County provides additional authority, and a valid framework, for the enforcement of building codes in the ETJ." |
| | "Whether the fees for building permits and inspections charged by the City amounted to an unconstitutional occupation tax." |
| "Whether the trial court properly granted the Town's request for temporary injunction when the evidence showed the Town had a probable right to relief." | |

| Petitioner in *Bizios*<br>(*Petitioner's Brief on the Merits at xiii*) | Appellants in the Present Appeal<br>(*Appellants' Brief at vi -vii*) |
|---|---|
| | "Whether the City of Helotes was properly enjoined from enforcing its building codes in the ETJ." |
| | "Whether the trial court erred in declaring Ordinance 83, §§ 1-3, 11-5-1992, Ordinance 402, § 2, 5-14-2009, Ordinance 503A, 4-25-2013, and Ordinance 541 § 1, 9-25-2014 void and unenforceable." |

7.      While the first issue in *Bizios* might appear to be similar to the first issue in the present appeal, the terms "subdivision rules" and "building codes and regulations" address distinct matters that are treated differently in the Texas Local Government Code. As set out more fully in TAB and GSABA's Appellees' Brief in this Court, and in GSABA's amicus brief in *Bizios*, "building codes and regulations" are *not* "rules governing plats and subdivisions of land" within the meaning of TEX. LOC. GOV'T CODE §§ 212.002 and 212.003. For the Court's convenience, a true and correct copy of the amicus brief that GSABA filed in *Bizios* (without Appendix) is attached hereto as **Ex. 1**.

8.      When the Supreme Court does rule in *Bizios*, moreover, that opinion will not address any of the following issues raised in the present appeal:

(a)      Appellants' claims that they have the requisite statutory authority to do what they did in the City's ETJ pursuant to TEX. LOC. GOV'T CODE § 51.003;

(b)      Appellants' claims that they have the requisite authority to do what they did in the City's ETJ pursuant to the City's 2014 Interlocal Agreement with Bexar County;

5

(c)     the validity of any Helotes building regulation ordinance, whether due to the City's lack of authority to enact—or its failure to comply with the procedural requirements for enacting—the ordinance at issue;

(d)     the propriety of any injunction against the City;

(e)     that portion of the trial court's judgment finding that the building permit fees charged by Helotes—whether inside the City's corporate limits or in its ETJ—constitute an unconstitutional occupation tax on the building industry; and

(f)     the trial court's decision that awarding TAB and GSABA their reasonable and necessary attorney's on the facts of this case was reasonable and just.

**B.     *Bizios* may not provide any definitive answers for this appeal**.

9.     The Supreme Court's opinion in *Bizios* will not necessarily provide a definitive answer regarding any issue raised in the present appeal.

10.     Despite the fact that the Supreme Court has granted review, the question of whether the Supreme Court has conflicts jurisdiction to decide *Bizios* was still an issue during oral argument, and one outcome that remains possible in *Bizios* is dismissal of the petition for lack of subject matter jurisdiction.  If the Supreme Court finds that it *does have* jurisdiction, there is still no assurance that it will reach the statutory authority issue raised by the present appeal.  For instance, the Supreme Court could decide *Bizios*, if at all, on Mr. Bizios's vested rights argument—an issue that is not raised in the present appeal at all.

6

11. Even if the Supreme Court were to address the statutory authority issue, though, there is still no assurance that ruling would apply to this particular case, which challenges the validity of certain Helotes ordinances and the constitutionality of others. Since a municipality can only act pursuant to its ordinances, the issue in any case involving the validity or constitutionality of a particular municipality's ordinance(s) is necessarily narrow and case-specific—addressing the language of the particular ordinance(s) at issue, the procedures used to adopt the ordinance(s), and the conduct of the municipality pursuant to the ordinance(s). An opinion in *Bizios*, if any, will not necessarily address the validity or constitutionality of the Helotes ordinances at issue in the present appeal. Instead, the *Bizios* opinion, if any, will probably address the propriety *vel non* of the trial court's temporary injunction, and given the interlocutory nature of the appeal, will almost certainly involve a remand for further proceedings.

**C.** **_Bizios_ could be decided before this appeal is submitted**.

12. Even without an abatement, *Bizios* could be decided before the present appeal is submitted, since *Bizios* was submitted more than two months ago on March 8, 2016, and the present appeal will not be submitted until June 21, 2016. For this reason, moving forward with this appeal—at least to and including oral argument and submission—makes sense. If, for some reason, *Bizios* is not decided prior to submission in the present case, the parties are under a continuing duty to notify the Court of any new developments in the law governing the issues on appeal and should promptly do so

7

if the Supreme Court's decision in *Bizios* affects the present appeal.

### III. PRAYER

For all these reasons, TAB and GSABA respectfully ask the Court to deny Appellants' Motion to Abate Appeal, proceed with the scheduled June 21, 2016, submission on oral argument, and affirm the trial court's judgment in all respects. Further, TAB and GSABA ask the Court to grant them all other legal and equitable relief to which they may be justly entitled.

Respectfully submitted,

LANGLEY & BANACK, INC.
745 East Mulberry, Suite 900
San Antonio, TX 78212-3166
Telephone: (210) 736-6600
Facsimile: (210) 735-6889

By: */s/ Sara Murray*
SARA MURRAY
smurray@langleybanack.com
State Bar No. 14729400
PAUL A. FLETCHER
pfletcher@langleybanack.com
State Bar No. 00795980

**ATTORNEYS FOR APPELLEES**
**THE TEXAS ASSOCIATION OF BUILDERS**
**AND THE GREATER SAN ANTONIO**
**BUILDERS ASSOCIATION**

8

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on May 13, 2016, a true and correct copy of the foregoing Appellees' Response to Appellants' Motion to Abate Appeal was served via the Court's electronic-filing system, properly addressed to:

R. Gaines Griffin
DAVIDSON TROILO REAM & GARZA, P.C.
601 NW Loop 410, Suite 100
San Antonio, TX 78216

**ATTORNEYS FOR APPELLANTS**

*/s/ Sara Murray*
Sara Murray

W:\lbclient\00168\0001\L1117774.WPD

# EXHIBIT 1

No. 15-0106

_____

_____

TOWN OF LAKEWOOD VILLAGE,
Petitioner,

v.

HARRY BIZIOS,
Respondent.

_____

On Petition for Review from the
Second Court of Appeals, Fort Worth, Texas
No. 02-14-00143-CV

_____

BRIEF OF AMICUS CURIAE
THE GREATER SAN ANTONIO BUILDERS ASSOCIATION
IN SUPPORT OF RESPONDENT HARRY BIZIOS

_____

SARA MURRAY
smurray@langleybanack.com
State Bar No. 14729400
PAUL A. FLETCHER
pfletcher@langleybanack.com
State Bar No. 00795980
LANGLEY & BANACK, INC.
745 East Mulberry, Suite 900
San Antonio, TX 78212-3166
Telephone: (210) 736-6600
Facsimile: (210) 735-6889

ATTORNEYS FOR AMICUS CURIAE
THE GREATER SAN ANTONIO
BUILDERS ASSOCIATION

# TABLE OF CONTENTS

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Issue Presented by Amicus Curiae . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

      TEX. LOC. GOV'T CODE §§ 212.002 and 212.003 do not authorize the Town to extend its building regulation ordinances to its extraterritorial jurisdiction because those ordinances are not "rules governing plat and subdivisions of land," as required by the statutes.

I.     Statement of Amicus Curiae's Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    The Town Must Have Express Statutory Authority to Act Inside Its Corporate Limits or in Its ETJ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Sections 212.002 and 212.003 Do Not Provide the Necessary Statutory Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          1.    Sections 212.002 and 212.003 apply to "rules governing plats and subdivisions of land," *not* to building regulations, building codes, or their attendant fees . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          2.    The Town's briefing conflates and confuses subdivision and platting regulation with building regulation, ignoring clear legislative distinctions between the two . . . . . . . . . . . . . . . . . . . . 7

          3.    *Milestone Potranco* does not support the Town's position . . . . . 11

          4.    The Town's misreading of Sections 212.002 and 212.003 conflicts with the legislative design of TEX. LOC. GOV'T CODE ch. 212 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          5.    The Town fails to mention the legislative history of Section 212.003, which undermines the Town's position. . . . . . . . . . . 14

6. The Town's public policy arguments, and those of some amici supporting the Town, do not and cannot supply the necessary statutory authority where there is none .......... 16

IV. Prayer ............................................................. 18

Certificate of Compliance ............................................. 18

Certificate of Service ................................................ 19

Appendix

**INDEX OF AUTHORITIES**

**CASES**

*Anderson v. City of San Antonio,*
123 Tex. 163, 67 S.W.2d 1036 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Brenham v. Brenham Water Co.,*
67 Tex. 542, 4 S. W. 143 (1887) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*City of Arlington v. Lillard,*
116 Tex. 446, 294 S.W. 829 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*City of Lubbock v. Phillips Petroleum Co.,*
41 S.W.3d 149 (Tex. App.—Amarillo 2000, no pet.) . . . . . . . . . . . . . . . . . . . . . . . .  2

*City of Lucas v. N. Tex. Mun. Water Dist.,*
724 S.W.2d 811 (Tex. App.—Dallas 1986, writ ref'd n.r.e.)
(supplemental opinion on motion for rehearing) . . . . . . . . . . . . . . . . . . . . . . . . . . 12-15

*City of Northlake v. E. Justin Joint Venture,*
873 S.W.2d 413 (Tex. App.—Fort Worth 1994, writ denied) . . . . . . . . . . . . . . . . .  3

*City of W. Lake Hills v. Westwood Legal Def. Fund,*
598 S.W.2d 681 (Tex. Civ. App.—Waco 1980, no writ) . . . . . . . . . . . . . . . . . . . . .  2, 3

*City of Weslaco v. Carpenter,*
694 S.W.2d 601 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) . . . . . . . . . . 13-15

*Ex parte Ernest,*
138 Tex. Crim. 441, 136 S.W.2d 595 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Ex parte Levinson,*
160 Tex. Crim. 606, 274 S.W.2d 76 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Levy v. City of Plano,* No. 05-97-00061-CV, 2001 WL 1382520
(Tex. App.—Dallas Nov. 8, 2001)(not designated for publication) . . . . . . . . . . . . .  13

*Milestone Potranco Dev., Ltd. v. City of San Antonio,*
298 S.W.3d 242 (Tex. App.—San Antonio 2009, pet. denied) . . . . . . . . . . . . . . . ii, 11

*Tex. Commerce Bank, NA v. Grizzle*,
96 S.W.3d 240 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Tex. Dep't of Transp. v. City of Sunset Valley*,
146 S.W.3d 637 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Union Carbide Corp. v. Synatzske*,
438 S.W.3d 39 (Tex. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATUTES**

TEX. LOC. GOV'T CODE ch. 212 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, 12

TEX. LOC. GOV'T CODE ch. 212, subch. A
(Regulation of Subdivisions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6, 12-14

TEX. LOC. GOV'T CODE ch. 212, subch. B
(Regulation of Property Development) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12-14

TEX. LOC. GOV'T CODE ch. 214, subch. G
(Building and Rehabilitation Codes) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TEX. LOC. GOV'T CODE § 212.002 . . . . . . . . . . . . . . . . . . . . ii, viii, 1-4, 6-8, 11-14

TEX. LOC. GOV'T CODE § 212.003 . . . . . . . . . . . . . . . . . . . . . . . ii, viii, 1-4, 6-16

TEX. LOC. GOV'T CODE § 212.003(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TEX. LOC. GOV'T CODE § 212.003(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

TEX. LOC. GOV'T CODE § 212.004(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX. LOC. GOV'T CODE § 212.004(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

TEX. LOC. GOV'T CODE § 212.043(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

TEX. LOC. GOV'T CODE § 212.049 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

TEX. LOC. GOV'T CODE §§ 214.211-214.219 . . . . . . . . . . . . . . . . . . . . . . . . . 13

T<span>EX</span>. R<span>EV</span>. C<span>IV</span>. S<span>TAT</span>. art. 970a,
*repealed by* Acts 1987, 70th Leg., ch. 149, § 49(1), eff. Sept. 1, 1987  . . . . . . . . . . . . .  15


**ORDINANCES**

Castroville, Tex., C<span>ODE OF</span> O<span>RDINANCES</span>
ch. 100, § 100-1  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Castroville, Tex., C<span>ODE OF</span> O<span>RDINANCES</span>
ch. 22, § 22-29  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Castroville, Tex., C<span>ODE OF</span> O<span>RDINANCES</span>
ch. 22, §§ 22-2, 22-27  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Leon Valley, Tex., C<span>ODE OF</span> O<span>RDINANCES</span>
ch. 10, § 10.02.004(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Leon Valley, Tex., C<span>ODE OF</span> O<span>RDINANCES</span>
ch. 3, § 3.02.055(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

San Antonio, Tex., C<span>ODE OF</span> O<span>RDINANCES</span>
ch. 35  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

San Antonio, Tex., C<span>ODE OF</span> O<span>RDINANCES</span>
ch. 35, art. I, § 35-102(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

San Antonio, Tex., C<span>ODE OF</span> O<span>RDINANCES</span>
ch. 35, art. I, § 35-102(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

San Antonio, Tex., C<span>ODE OF</span> O<span>RDINANCES</span>
ch. 35, art. I, § 35.104(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

San Antonio, Tex., C<span>ODE OF</span> O<span>RDINANCES</span>
ch. 35, art. IV, § 35-401(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

San Antonio, Tex., C<span>ODE OF</span> O<span>RDINANCES</span>
ch. 35, art. IV, § 35-430(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

San Antonio, Tex., CODE OF ORDINANCES
ch. 35, art. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

San Antonio, Tex., CODE OF ORDINANCES
ch. 35, art. V, § 35-523 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

San Antonio, Tex., CODE OF ORDINANCES
ch. 35, art. V, § 35-523(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Shavano Park, Tex., CODE OF ORDINANCES
ch. 28, § 28-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Shavano Park, Tex., CODE OF ORDINANCES
ch. 6, § 6-39 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Town of Lakewood Village, Tex.,
Ordinance 10-01 (Building Ordinance)(Jan. 14, 2010) . . . . . . . . . . . . . . . . . . . . . 6, 9

Town of Lakewood Village, Tex.,
Ordinance 15-04 (Residential Code Ordinance)(May 14, 2015) . . . . . . . . . . . . . . . 6, 9

Town of Lakewood Village, Tex.,
Ordinance 14-13 (Subdivision Ordinance)(Nov. 13, 2014) . . . . . . . . . . . . . . . . . . . 9

Town of Lakewood Village, Tex.,
Ordinance 14-13 § 10.1 (Subdivision Ordinance)(Nov. 13, 2014) . . . . . . . . . . . . . . 4

Town of Lakewood Village, Tex.,
Ordinance 15-09 § 1 (Consolidated Fee Ordinance)(July 9, 2015) . . . . . . . . . . . . . 6, 9

**RULES**

TEX. R. APP. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**MISCELLANEOUS**

1 DILLON, MUNICIPAL CORPS. § 237 (5th ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Building code*, BLACK'S LAW DICTIONARY (6th ed. 1990) . . . . . . . . . . . . . . . . . . . . . . 6

*Plat*, BLACK'S LAW DICTIONARY (6th ed. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Subdivision*, AMERICAN HERITAGE DICTIONARY (2d ed. 1982) . . . . . . . . . . . . . . . . 4, 5

*Subdivision*, BLACK'S LAW DICTIONARY (6th ed. 1990) . . . . . . . . . . . . . . . . . . . . . . 5

Tex. H.B. 13, 58th Leg., R.S. (1963)(Enrolled Version) . . . . . . . . . . . . . . . . . . . . . . 15

Tex. H.B. 13, 58th Leg., R.S. (1963)(Introduced Version) . . . . . . . . . . . . . . . . . . . . 15

Tex. H.B. 3187, 71st Leg., R.S. (1989)(Introduced Version) . . . . . . . . . . . . . . . . . . 14

## ISSUE PRESENTED BY AMICUS CURIAE

TEX. LOC. GOV'T CODE §§ 212.002 and 212.003 do not authorize the Town to extend its building regulation ordinances to its extraterritorial jurisdiction because those ordinances are not "rules governing plat and subdivisions of land," as required by the statutes.

TO THE HONORABLE SUPREME COURT OF TEXAS:

Pursuant to TEX. R. APP. P. 11, the Greater San Antonio Builders Association ("GSABA") files this Amicus Curiae Brief in Support of Respondent Harry Bizios and respectfully shows the Court:

## I. STATEMENT OF AMICUS CURIAE'S INTEREST

GSABA is a not-for-profit trade association established to represent builders, developers, remodelers, and affiliated industry members in the greater San Antonio area for the purpose of benefitting and promoting home ownership. Along with twenty-seven other local home builders associations, GSABA is a member of the Texas Association of Builders, which is an affiliate of the National Association of Home Builders. GSABA is paying the fees and expenses incurred in preparing this Amicus Curiae Brief.

## II. SUMMARY OF THE ARGUMENT

The Town of Lakewood Village ("Town"), a type-A general-law municipality, must have express statutory authority to act within its corporate limits or in its extraterritorial jurisdiction ("ETJ"). The Town lacks the necessary statutory authority to extend its building regulation ordinances to its ETJ. Contrary to its arguments in this Court, the Town cannot find such authority in TEX. LOC. GOV'T CODE §§ 212.002 ("Section 212.002") and 212.003 ("Section 212.003") because the Town's building regulation ordinances are not "rules governing plats and subdivisions of land," as

required by those statutes. In an effort to fit its building regulation ordinances into Sections 212.002 and 212.003, the Town confuses and conflates subdivision and platting regulation with building regulation, ignoring the clear legislative distinctions between the two. The Town does not address the legislative history of Section 212.003, which shows that the Legislature has at least twice refused to grant municipalities the very express statutory authority that the Town now claims it already has. The Town's public policy arguments, and those of some amici supporting the Town, do not and cannot supply the requisite statutory authority where there is none.

### III. ARGUMENT

**A. The Town Must Have Express Statutory Authority to Act Inside Its Corporate Limits or in Its ETJ.**

General-law municipalities like the Town are "political subdivisions created by the State and, as such, possess those powers and privileges that the State expressly confers upon them." *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 645 (Tex. 2004). Express statutory authority is also necessary for all municipalities—both home-rule and general law—to act outside their corporate limits in their ETJs. *City of W. Lake Hills v. Westwood Legal Def. Fund*, 598 S.W.2d 681, 686 (Tex. Civ. App.—Waco 1980, no writ); *Ex parte Ernest*, 138 Tex. Crim. 441, 445, 136 S.W.2d 595, 597 (1939) (general law city's powers are "limited to its boundaries unless the Legislature expressly grants it extra-territorial powers"); *see also City of Lubbock v. Phillips Petroleum Co.*, 41 S.W.3d 149, 159 (Tex. App.—Amarillo 2000, no pet.)(stating, as to home-rule City of Lubbock, that "it

2

is the general rule that a city may only exercise its powers within its corporate limits unless its authority is expressly extended").

All acts taken by a municipality "'beyond the scope of the powers granted are void.'" *Anderson v. City of San Antonio*, 123 Tex. 163, 166-67, 67 S.W.2d 1036, 1037 (1934) (quoting 1 DILLON, MUNICIPAL CORPS. § 237 (5th ed.)); *see also City of Northlake v. E. Justin Joint Venture*, 873 S.W.2d 413, 418 (Tex. App.—Fort Worth 1994, writ denied) (ordinance that exceeded statutory authority was void). "'Neither the [municipal] corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized [by the charter or statute by which it is created], or by some legislative act applicable thereto.'" *Anderson*, 123 Tex. at 166-67, 67 S.W.2d at 1037 (quoting 1 DILLON, MUNICIPAL CORPS. § 237 (5th ed.)); *see also City of Northlake*, 873 S.W.2d at 418-19. While the law presumes a city ordinance to be reasonable and valid, "'any fair, reasonable doubt as to the existence and possession of'" a particular power claimed by a city "'will be resolved against'" the city, and "'the power denied to it.'" *City of Arlington v. Lillard*, 116 Tex. 446, 452-53, 294 S.W. 829, 831 (1927) (quoting *Brenham v. Brenham Water Co.*, 67 Tex. 542, 4 S. W. 143 (1887)); *see also City of W. Lake Hills*, 598 S.W.2d at 683.

**B.    Sections 212.002 and 212.003 Do Not Provide the Necessary Statutory Authority**.

**1.    Sections 212.002 and 212.003 apply to "rules governing plats and subdivisions of land," *not* to building regulations, building codes, or their attendant fees.**

Section 212.003 allows a municipality to extend to its ETJ the sorts of "rules

3

governing plats and subdivisions of land" authorized by Section 212.002. Section 212.002, in turn, provides: "After a public hearing on the matter, the governing body of a municipality may adopt rules governing plats and subdivisions of land within the municipality's jurisdiction to promote the health, safety, morals, or general welfare of the municipality and the safe, orderly, and healthful development of the municipality." Sections 212.002 and 212.003 are part of TEX. LOC. GOV'T CODE ch. 212, subch. A (Regulation of Subdivisions), and both statutes specifically and unambiguously apply to "rules governing plats and subdivisions of land"—*not* to just any ordinance that might arguably "promote the health, safety, morals, or general welfare of the municipality and the safe, orderly, and healthful development of the municipality."

The Town's Subdivision Ordinance (Ordinance 14-13) does not define either "subdivision" or "plat," but it does provide that "[t]erms which are used in [the] Ordinance and are not specifically defined shall be given their ordinary meaning, unless the context requires or suggests otherwise." Town of Lakewood Village, Tex., Ordinance 14-13 (Subdivision Ordinance) § 10.1 (Nov. 13, 2014) (*Appendix 1* hereto). When given their ordinary meanings, both "subdivision" and "plat" refer to divisions of land, *not* to buildings, construction of buildings, or building regulations. The AMERICAN HERITAGE DICTIONARY (2d ed. 1982), for instance, defines the noun "subdivision" as the "act or process of subdividing," a "subdivided part," or an "area composed of subdivided lots." The verb "subdivide" means "to divide a part or parts into smaller

4

parts," "to divide into a number of parts, esp. to divide (land) into lots," and "to form subdivisions." *Id.* Similarly, BLACK'S LAW DICTIONARY (6th ed. 1990) defines "subdivision" as the "[d]ivision into smaller parts of the same thing or subject-matter. The division of a lot, tract, or parcel of land into two or more lots, tracts, parcels or other divisions of land for sale or development." And BLACK'S defines "plat" as a "map of a specific land area such as a town, section, or subdivision showing the location and boundaries of individual parcels of land subdivided into lots, with streets, alleys, easements, etc., usually drawn to a scale." In the present case, the final plat for the subdivision in which Mr. Bizios's property is located was approved by the Town of Little Elm and Denton County in 1999 (CR 109).

For purposes of chapter 212, subchapter A—and with few exceptions not relevant here—a plat is required when the "owner of a tract of land located within the limits or in the extraterritorial jurisdiction of a municipality . . . divides [a] tract [into] two or more parts [1] to lay out a subdivision of the tract, including an addition to a municipality, [2] to lay out suburban, building, or other lots, or [3] to lay out streets, alleys, squares, parks, or other parts of the tract intended to be dedicated to public use or for the use of purchasers or owners of lots fronting on or adjacent to the streets, alleys, squares, parks, or other parts." TEX. LOC. GOV'T CODE § 212.004(a). In order to be recorded, the required plat must: (1) "describe the subdivision by metes and bounds"; (2) "locate the subdivision with respect to a corner of the survey or tract or an original corner of the

5

original survey of which it is a part"; and (3) "state the dimensions of the subdivision and of each street, alley, square, park, or other part of the tract intended to be dedicated to public use or for the use of purchasers or owners of lots fronting on or adjacent to the street, alley, square, park, or other part." *Id.* § 212.004(b). As with the ordinary meanings of "plat" and "subdivision," those terms as used in chapter 212, subchapter A clearly refer to the division of tracts of *land* and, in the case of "subdivision," to the laying out of lots, streets, alleys, squares, or parks, or what is sometimes referred to as "horizontal" construction.

By contrast, the Town's building regulation ordinances—specifically, its Building Ordinance (Ordinance 10-01), its Residential Code Ordinance (Ordinance 15-04), and section 1 of its Consolidated Fee Ordinance (Ordinance 15-09)—address building permits, building codes, and the construction of buildings, or what is sometimes referred to as "vertical" construction, *not* plats or subdivisions of *land*. *See Appendix 2*, *Appendix 3*, and *Appendix 4* hereto, respectively. BLACK'S LAW DICTIONARY defines "building code" as "laws, ordinances, or government regulations concerning fitness for habitation setting forth standards and requirements for the construction, maintenance, operation, occupancy, use or appearance of buildings, premises, and dwelling units." Nothing in that definition remotely suggests the sort of "rules governing plats and subdivisions of land" to which Sections 212.002 and 212.003 apply.

Notably, the construction of buildings is part of the definition of "development"

6

in TEX. LOC. GOV'T CODE ch. 212, subch. B (Regulation of Property Development):

> "Development" means the new construction or the enlargement of any exterior dimension of any building, structure, or improvement.

TEX. LOC. GOV'T CODE § 212.043(1). Sections 212.002 and 212.003 are not part of subchapter B, though, and neither of those two statutes says anything at all—and certainly nothing express or specific, or even clearly implied—about a municipality's authority to enforce its building regulation ordinances or building codes in its ETJ. The words "building code," "building regulations," "building permits," "building permit fees," "building inspection," and the like do not appear anywhere in either statute.

Reading those words into Sections 212.002 and 212.003 under the guise of statutory interpretation, as the Town and some amici invite the Court to do, would be impermissible judicial legislation. *Ex parte Levinson*, 160 Tex. Crim. 606, 608, 274 S.W.2d 76, 78 (1955) ("[I]n construing a statute or in seeking to ascertain legislative intent in enacting a statute, the courts must not enter the field of legislation and write, re-write, change, or add to a law."). Courts must "take statutes as [they] find them, presuming the Legislature included words that it intended to include and omitted words it intended to omit." *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 52 (Tex. 2014). Courts "do not read words into a statute to make it what [they] consider more reasonable." *Id.*

### 2. The Town's briefing conflates and confuses subdivision and platting regulation with building regulation, ignoring clear legislative distinctions between the two.

The Town's arguments regarding Sections 212.002 and 212.003 conflate and

7

confuse subdivision and platting regulation with building regulation, ignoring the clear legislative distinctions between the two. *See, e.g., Petitioner's Brief on the Merits* at 10 (citing Sections 212.002 and 212.003 and arguing Texas municipalities have "statutory authority to apply, by ordinance, their subdivision rules regarding development, including platting, building standards and permitting, in their ETJ"); 17 (arguing that Sections 212.002 and 212.003 authorize municipalities to extend not only their subdivision and platting rules to the ETJ, but also their building codes and attendant permitting and inspection processes); 18 n.3 (listing general law municipalities that have purportedly "extended their subdivision/building regulations to their ETJ"); 25 (arguing that courts have "uniformly held that subdivision rules governing development, including building codes, can be applied" in the ETJ); 31 (arguing that the Town validly "extended its subdivision rules, including building codes, to the ETJ"); *see also Petitioner's Reply Brief on the Merits* at 10-11 (citing Sections 212.002 and 212.003 but then arguing that these and other statutes "provide clear authority for the Town to extend and enforce its building codes in its ETJ"); 12 (arguing that Sections 212.002 and 212.003 authorize municipalities to "adopt rules governing plats and subdivisions of land—including building codes . . . and extend those rules to the ETJ"); 13 (arguing that Sections 212.002 and 212.003 give the Town "authority to regulate development—including extension and enforcement of its building codes in the ETJ"); 14 (arguing that Sections 212.002 and 212.003 provide the Town with "authority to extend and enforce its building codes to the ETJ").

8

The Town knows that building regulations and building codes are not "rules governing plats and subdivisions of land," as evidenced *inter alia* by the fact that the Town has separate ordinances for building regulation and subdivision and platting regulation. *Compare* Building Ordinance (Ordinance 10-01) (*Appendix 2* hereto) and Residential Code Ordinance (Ordinance 15-04) (*Appendix 3* hereto) *with* Subdivision Ordinance (Ordinance 14-13) (*Appendix 1* hereto). Even the fees associated with plat reviews and building inspections are different from one another. *See* Consolidated Fee Ordinance (Ordinance 15-09) (*Appendix 4* hereto). In fact, nearly all of the general law municipalities listed in the Town's brief at FN 3 have codified their building regulation ordinances separately from their subdivision and platting ordinances. Unlike the Town and contrary to the Town's analysis, though, almost all of those cities have extended only their subdivision and platting ordinances—*not* their building regulation ordinances—to their ETJs pursuant to Section 212.003. *See Petitioner's Brief on the Merits at 18 n.3.*

Although the Town has not provided copies of the cited ordinances for the Court's review, GSABA has included a few of the referenced ordinances from the San Antonio area in *Appendix 5* hereto, solely for purposes of illustration. Leon Valley, for instance, has codified its building regulations in Chapter 3 of its Code of Ordinances, and *has not* extended its building permit requirement to its ETJ (§ 3.02.055(a) ("No building or accessory building shall hereafter be erected or constructed *within the corporate limits of the city*, and no existing building or accessory building *within the corporate limits* shall

9

hereafter be structurally altered or addition added thereto, unless a building permit has first been issued." (emphasis supplied)).  By contrast, Leon Valley has codified its subdivision regulations in Chapter 10 of its Code of Ordinances, and *has* extended its subdivision regulations to its extraterritorial jurisdiction (§ 10.02.004(a) ("The provisions of this article shall be applicable in the City of Leon Valley ('city') and its extraterritorial jurisdiction.")).

The same is true for the City of Shavano Park, which has codified its building regulations in Chapter 6 of its Code of Ordinances, but *has not* extended its building permit requirement to its ETJ.  (§ 6-39).  Shavano Park, however, has codified its subdivision regulations in Chapter 28 of its Code of Ordinances and *has* extended those regulations to its ETJ (§ 28-3).

The City of Castroville, too,  has codified its building regulations in Chapter 22 of its Code of Ordinances (Buildings and Building Regulations) and *has not* extended its building permit requirement to its ETJ (§§ 22-2, 22-27)(a) made applicable only within the city limits; *see also* § 22-29, providing for a fine or criminal penalty, which under TEX. LOC. GOV'T CODE § 212.003(b) cannot apply to the city's ETJ).  Castroville, though, has codified its subdivision and platting ordinances in Chapter 100 of its Code of Ordinances (Subdivisions) and *has* extended them to the city's ETJ pursuant to Section 212.003 (§ 100-1).

### 3. *Milestone Potranco* does not support the Town's position.

The Town cannot squeeze its building regulation ordinances into the "plats and subdivisions of land" language of Sections 212.002 and 212.003 by analogizing to the San Antonio Tree Preservation ordinance at issue in *Milestone Potranco Dev., Ltd. v. City of San Antonio*, 298 S.W.3d 242, 246-47 (Tex. App.—San Antonio 2009, pet. denied). *See Petitioner's Brief on the Merits* at xi-xii, 28-29. The Tree Preservation ordinance at issue in *Milestone Potranco* is nothing like the Town's building regulation ordinances. Rather, the Tree Preservation ordinance is part of Article V, § 35-523 of San Antonio's Unified Development Code (2006) ("UDC"), codified in Chapter 35 of the San Antonio Code. *Id.* at 245. *Appendix 6* hereto. UDC art. V sets forth *subdivision* regulations, and the purpose of Article V is to "consolidate the substantive standard relating to the issuance of permits for zoning and *subdivision* approval in order to provide clarity and certainty in the development approval process." UDC § 35-102(b), (d) (emphasis supplied).

That purpose is consistent with the Fourth Court of Appeals' conclusion that the Tree Preservation ordinance was "a rule 'governing plats and subdivisions of land'" within the meaning of Section 212.002, and could thus be applied in San Antonio's ETJ pursuant to Section 212.003. *Milestone Potranco*, 298 S.W.3d at 244, 249 (quoting Section 212.002). Further, the UDC itself expressly makes its *subdivision* regulations, including the Tree Preservation ordinance, applicable both within the city limits and in San Antonio's ETJ. UDC § 35-523(a)(1)(A); *see also* UDC §§ 35.104(c), 35-430(a)(1).

11

By contrast, the UDC provision addressing building permit requirements—which appears in Article IV, Division 1 (General Procedural Requirements), *not* in Article V, Division 4 (Subdivisions)—is expressly limited to buildings or structures located "within the city limits" of San Antonio.  UDC § 35-401(c).  *See Appendix 6* hereto.

### 4. The Town's misreading of Sections 212.002 and 212.003 conflicts with the legislative design of TEX. LOC. GOV'T CODE ch. 212.

The Town's misreading of Sections 212.002 and 212.003 conflicts with TEX. LOC. GOV'T CODE § 212.049, which the 70th Legislature enacted in 1987 to state that TEX. LOC. GOV'T CODE ch. 212, subch. B—of which Section 212.049 is a part—"does not authorize the municipality to require municipal building permits or otherwise enforce the municipality's building code in its extraterritorial jurisdiction."  By placing this provision in subchapter B (Regulation of Property Development), the Legislature underscored the fact that requiring building permits and enforcing building codes in a municipality's ETJ are matters pertaining to the Regulation of Property Development, *not* to the Regulation of Subdivisions, which are instead addressed in subchapter A, including its Sections 212.002 and 212.003.

For similar reasons, the Town's heavy reliance on *City of Lucas v. North Texas Municipal Water District*, 724 S.W.2d 811, 823-24 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (supplemental opinion on motion for rehearing) is misplaced.  *See Petitioner's Brief on the Merits passim*; *Petitioner's Reply Brief on the Merits passim*.  After *Lucas* was decided in

1986, the Legislature made clear that matters pertaining to the Regulation of Property Development—including the impermissibility of requiring building permits and enforcing building codes in a city's ETJ—are distinct from matters pertaining to the Regulation of Subdivisions. *Compare* TEX. LOC. GOV'T CODE ch. 212, subch. B (Regulation of Property Development); TEX. LOC. GOV'T CODE §§ 212.043, 212.049 *with* TEX. LOC. GOV'T CODE ch. 212, subch. A (Regulation of Subdivisions); TEX. LOC. GOV'T CODE §§ 212.002, 212.003. Also, in adding TEX. LOC. GOV'T CODE ch. 214, subch. G (Building and Rehabilitation Codes) (TEX. LOC. GOV'T CODE §§ 214.211-214.219) in 2001, the Legislature did not include any language authorizing the extension of building regulations to the ETJ, or add any language about building regulations to either Section 212.002 or 212.003, which govern "plats and subdivisions of land."

Appropriately, when faced with the statutory framework that has existed since shortly after *Lucas*, the same Dallas court that wrote *Lucas* concluded in 2001 that a "city is statutorily prohibited from regulating land use and construction on property in its ETJ; a city may apply only its subdivision ordinances to such property." *Levy v. City of Plano*, No. 05-97-00061-CV, 2001 WL 1382520, at *4 (Tex. App.—Dallas Nov. 8, 2001) (not designated for publication) (citing TEX. LOC. GOV'T CODE § 212.003(a)).

*City of Weslaco v. Carpenter*, 694 S.W.2d 601 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) does not support the Town's position, either. *See Petitioner's Brief on the Merits passim; Petitioner's Reply Brief on the Merits passim*. *City of Weslaco* involved the subdivision

13

of land into 128 rental lot spaces and a site plan for mobile homes or recreational vehicles, not the construction of buildings or residences. 694 S.W.2d at 602. And like *Lucas*, *City of Weslaco* was decided under a statutory scheme that has long since been amended and clarified by TEX. LOC. GOV'T CODE ch. 212, subchs. A and B, and that clearly distinguishes subdivision and platting from property development, including the construction of buildings. *See* 694 S.W.2d at 602.

### 5. The Town fails to mention the legislative history of Section 212.003, which undermines the Town's position.

The Town cannot change the "rules governing plats and subdivisions of land" language of Sections 212.002 and 212.003 to "building regulations" language by arguing about the legislative history of TEX. LOC. GOV'T CODE ch. 212, subch. B, which does not even include Sections 212.002 and 212.003. *See*, *e.g.*, *Petitioner's Reply Brief on the Merits at 17-20*. The Town, moreover, fails to address the legislative history of Section 212.003, which shows that the Legislature has at least twice declined to enact statutory amendments the would have provided the express authority that the Town erroneously claims it already has.

In 1989, for instance, the Legislature considered a proposed amendment to Section 212.003, which sought to replace the statute's language with the following: "ordinances adopted under Section 212.002 and *other municipal ordinances relating* to fire safety, the *construction of buildings or other structures or improvements*, or access to public roads." Tex. H.B. 3187, 71st Leg., R.S. (1989) (Introduced Version) (emphasis supplied). In the

14

end, the Legislature rejected the "ordinances . . . relating to . . . the construction of buildings or other structure or improvements" language and did not otherwise authorize municipalities to extend such ordinances to their ETJs. *See Appendix 7* hereto; *see also* TEX. LOC. GOV'T CODE § 212.003.

The legislative history of TEX. REV. CIV. STAT. art. 970a (the predecessor to Section 212.003 and cited in *Lucas* and *City of Weslaco*) does not support the Town's analysis either. In 1963, the Legislature passed House Bill 13, enacting the Municipal Annexation Act, which established the extraterritorial jurisdiction of cities and towns and authorized the exercise of certain limited powers within the ETJs. As introduced, House Bill 13 read in relevant part:

> Sec. 2(a)    The governing body of any city or town may, by ordinance, extend to all of the extraterritorial jurisdiction defined under the authority of Section 1(f) of this Act, the application of one or more of such city or town's ordinances relating to: health; sanitation; subdivision development; zoning; *building construction, including but not limited to building, plumbing and electrical standards and regulations.*

Tex. H.B. 13, 58th Leg., R.S. (1963) (Introduced Version)(emphasis supplied). However, the municipal authority granted by the enrolled version, which became law, was much narrower. As enacted, the statute read in relevant part:

> Section 4. Extension of Subdivision Ordinance Within the Extraterritorial Jurisdiction. The governing body of any city may extend by ordinance to all of the area under its extraterritorial jurisdiction the application of the city's ordinance establishing rules and regulations governing plats and the subdivision of land . . . .

Tex. H.B. 13, 58th Leg., R.S. (1963) (Enrolled Version). The Enrolled Version did not

15

contain the proposed language about "building construction, including but not limited to building, plumbing and electrical standards and regulations." *See Appendix 8* hereto; *see also* TEX. LOC. GOV'T CODE § 212.003.

### 6. The Town's public policy arguments, and those of some amici supporting the Town, do not and cannot supply the necessary statutory authority where there is none.

As this Court has made clear, the public policies of Texas are reflected in its statutes, which are the province of the Legislature. *Tex. Commerce Bank, NA v. Grizzle*, 96 S.W.3d 240, 250 (Tex. 2002). Because it lacks the necessary statutory authority to enforce its building regulation ordinances in its ETJ, the Town cannot just take it upon itself to enforce those ordinances in its ETJ anyway, based upon some perceived public policy or professed concern that residences in the ETJ might not otherwise be safely constructed. As this brief confirms, the *law is* that the Town cannot enforce its building regulation ordinances in its ETJ without express statutory authority to do so, and no such authority exists. The *law is not* that the Town cannot enforce its building regulation ordinances in its ETJ without express statutory authority to do so unless it can come up with some excuse for ignoring the law.

Without the requisite statutory authority, the Town's policy arguments, and those of some amici supporting the Town, are irrelevant to any of the issues pending before this Court. While policy arguments might be of interest to the Legislature, at least twice the Legislature has rejected proposed amendments that would have granted municipalities the very express statutory authority that the Town now claims it already

16

has, but which it actually does not have at all. Having failed to convince the Legislature to change the law, the Town and its supporters are now trying to convince courts that municipalities already have all the statutory authority they need to enforce their building regulation ordinances in their ETJs.

Of particular concern to GSABA are the amicus briefs filed by various municipalities and the Texas Municipal League purporting to present extra-record anecdotal information based on hearsay, rumor, surmise, and innuendo. Without any legal analysis, these amicus briefs essentially argue that only by extending their building regulation ordinances to their ETJs (which is in derogation of existing Texas law) will general law municipalities be able to protect citizens buying homes in the ETJs from home builders who, absent such municipal regulation, cannot be trusted to construct safe housing. These arguments are offensive to home builders and the home-building industry, especially since they have no basis in law or fact. The municipalities' feigned concern for citizens in the ETJs also rings hollow when these same municipalities generally provide no municipal services at all to those same citizens.

TML's allegations about houses that supposedly burned down in the Town's ETJ are neither based on the record in this case, nor connected to any conduct at issue in this case. Likewise, TML's speculation about the alleged reinspection rate in the City of Helotes' ETJ is unconnected to the record or conduct at issue in this case. The Court should not consider amicus briefs that have no support in the record, or in law or fact.

17

## IV.  PRAYER

For these reasons, GSABA respectfully asks the Court to affirm the Second Court of Appeals' judgment in all respects.

Respectfully submitted,

LANGLEY & BANACK, INC.
745 East Mulberry, Suite 900
San Antonio, TX  78212-3166
Telephone: (210) 736-6600
Facsimile:  (210) 735-6889

By:    */s/ Sara Murray*
     SARA MURRAY
     smurray@langleybanack.com
     State Bar No. 14729400
     PAUL A. FLETCHER
     pfletcher@langleybanack.com
     State Bar No. 00795980

**COUNSEL FOR AMICUS CURIAE**
**THE GREATER SAN ANTONIO**
**BUILDERS ASSOCIATION**

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4(i)(1),(3), I hereby certify that this brief was prepared in Garamond 14-point font, using Word Perfect X4, and according to the program's word-count function, the parts of the brief that must be counted contain 4,363 words.

*/s/ Sara Murray*
Sara Murray

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 28, 2016, a true and correct copy of the foregoing Brief of Amicus Curiae the Greater San Antonio Builder's Association in Support of Respondent Harry Bizios was served via the Court's electronic-filing system, properly addressed to:

Wm. Andrew Messer
Brenda N. McDonald
Brett Gardner
MESSER, ROCKEFELLER & FORT, PLLC
6351 Preston Road, Suite 350
Frisco, TX  5034
**COUNSEL FOR PETITIONER**

Arthur J. Anderson
WINSTEAD PC
500 Winstead Building
2728 North Harwood Street
Dallas, TX  75201
**COUNSEL FOR RESPONDENT**

David F. Johnson
WINSTEAD PC
777 Main Street, Suite 1100
Fort Worth, TX  76102
**COUNSEL  FOR RESPONDENT**

*/s/ Sara Murray*
Sara Murray

W:\lbclient\16967\0003\L1113955.WPD

19